IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANCIS SCHAEFFER COX, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-cv-03367-B |
| | § | |
| BENBELLA BOOKS, INC. AND | § | |
| WILLIAM FULTON, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

# TABLE OF CONTENTS

**Page(s)**

I.     SUMMARY OF THE ARGUMENTS ............................................................ 1

II.    BACKGROUND FACTS .......................................................................... 2

III.   ARGUMENT ...................................................................................... 6

    A.    Legal Standards ....................................................................... 6

    B.    Plaintiff's Defamation, Defamation Per Se, and Defamation by Implication Claims Fail Because They Are Time Barred Under Texas Law ........................... 8

        1.    The Texas Statute of Limitations Applies to Plaintiff's Claims ................ 8

        2.    The Single Publication Rule Applies to The Blood of Patriots ................. 9

        3.    The Single Publication Rule Applies to the Internet Publications ............ 10

        4.    The Statute of Limitations Bars Plaintiff's Defamation Claims Because The Blood of Patriots was not Altered or Republished ............. 10

    C.    Plaintiff's Defamation Claims Must Be Dismissed as Matter of Law Because He Failed to Comply with Texas' Defamation Mitigation Act ............. 11

    D.    Plaintiff's Defamation and Intentional Infliction of Emotional Distress Claims Fail Because they Implicate the Validity of His Criminal Conviction ..... 11

    E.    Plaintiff's Complaint Fails to Allege Actionable Defamation, Defamation Per Se, and Defamation by Implication Claims .................................... 14

        1.    Defamation Standard ............................................................ 14

        2.    Plaintiff Fails to Plead Actual Malice or Even Negligence ..................... 15

        3.    The Alleged Defamatory Statements Are Substantially True .................. 17

    F.    Plaintiff's Complaint Fails to Allege an Actionable Claim for Intentional Infliction of Emotional Distress .................................................... 20

        1.    The Complaint Lacks Any Factual Allegations to Independently Support Plaintiff's Intentional Infliction of Emotional Distress Claim .... 21

        2.    Plaintiff's Intentional Infliction of Emotional Distress Claim Must be Dismissed for the Same Reasons as His Defamation Claim .................. 22

    G.    Plaintiff's Complaint Fails to Allege an Actionable Claim for Misappropriation of Name or Likeness ............................................ 23

IV.   PRAYER ......................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adi v. Houston Chronicle Publ'g. Co.*,
No. 14–01–00213–CV, 2003 WL 61121 (Tex. App.—Houston [14th Dist.]
Jan. 9, 2003, no pet.) ............................................................................................18, 19, 20

*Alaskasland.Com, LLC v. Cross*,
357 P.3d 805 (Alaska 2015).............................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................6, 7, 18, 21

*Baker and Hughes, Inc. v. Keco R & D, Inc. .*,
12 S.W.3d 1 (Tex.1999)...................................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................6, 18, 21

*Bradford v. Vento*,
48 S.W.3d 749 (Tex. 2001)..............................................................................................21

*Busch v. Basic Organics, Inc.*,
No. CIVA 3:06CV2261 L, 2007 WL 603385 (N.D. Tex. Feb. 27, 2007)
(Lindsay, J.) .....................................................................................................................25

*Busch v. Viacom Int'l, Inc.*,
477 F. Supp. 2d 764 (N.D. Tex. 2007) (Lindsay, J.) ............................................................25

*Byrd v. Vick*,
409 S.W.3d 772 (Tex. App.—Fort Worth 2013), *overruled on other grounds
by Cartney, Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) ...........................................22

*California v. Copus*,
158 Tex. 196, 309 S.W.2d 227 (1958)................................................................................9

*Channel 4, KGBT v. Briggs*,
759 S.W.2d 939 (Tex. 1988)............................................................................................16

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005)......................................................................................15, 20

*Cleven v. Mid-Am. Apartment Communities, Inc.*,
No. 1:16-CV-820-RP, 2017 WL 4276534 (W.D. Tex. Sept. 26, 2017) ..........................3, 4, 5

*Coghlan v. Wellcraft Marine Corp.*,
    240 F.3d 449 (5th Cir.2001) ...................................................................8

*Conley v. Driver*,
    175 S.W.3d 887 (Tex. App.—Texarkana 2005, pet. denied) .................................22

*Cooper v. Trent*,
    551 S.W.3d 325 (Tex. App.—Houston [14th Dist.] 2018), *review denied* (Jan.
    25, 2019) ...................................................................12, 13, 14

*Cox v. United States*,
    138 S.Ct. 2625 (June 11, 2018) (mem. op.) .................................................5

*Creditwatch, Inc. v. Jackson*,
    157 S.W.3d 814 (Tex. 2005) ...................................................................21

*Cruz v. Van Sickle*,
    452 S.W.3d 503 (Tex. App.—Dallas 2014, no pet.) .......................................10

*Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*,
    814 F.Supp.2d 698 (N.D. Tex. Aug. 29, 2011) (Boyle, J.) .................................9

*D Magazine Partners, L.P. v. Rosenthal*,
    529 S.W.3d 429 (Tex. 2017) ...................................................................18

*Draker v. Schreiber*,
    271 S.W.3d 318 (Tex. App.—San Antonio 2008, no pet.) ................................22

*Espinosa v. Aaron's Rents, Inc.*,
    484 S.W.3d 533 (Tex. App.—Houston [14th Dist.] 2016, no pet.) .......................22

*Flax v. Potts*,
    725 F. Supp. 322 (N.D. Tex. 1989) (Mahon, J.)., *aff'd and remanded*, 915 F.2d
    155 (5th Cir. 1990) ...................................................................17

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ...................................................................8

*Gentry v. Houston Police Dep't*,
    *No*. 14-08-01094-CV, 2009 WL 10453387 (Tex. App.—Houston [14th Dist.]
    July 16, 2009, no pet.) ...................................................................13

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ...................................................................15

*Hainze v. Richards*,
    207 F.3d 795 (5th Cir. 2000) ...................................................................12

*Hamad v. Ctr. for Jewish Cmty. Studies*,
      265 F. App'x. 414 (5th Cir. 2008) .......................................................................23

*Heck v. Humphrey*,
      512 U.S. 477 (1994) (analyzing a federal claim under 42 U.S.C. § 1983) ...........12

*Hoffman-La Roche Inc. v. Zeltwanger*,
      144 S.W.3d 438 (Tex. 2004).........................................................................21, 22

*Holloway v. Butler*,
      662 S.W.2d 688 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) ...................10, 11

*Inge v. Walker*,
      No. 3:16-CV-0042-B, 2017 WL 4838981 (N.D. Tex. Oct. 26, 2017) (Boyle,
      J.)............................................................................................................................12

*Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*,
      20 F.3d 1362 (5th Cir. 1994) ...................................................................................7

*In re Katrina Canal Breaches Consol. Lit.*,
      533 F.Supp.2d 615 (E.D. La. 2008)..................................................................1, 8

*Kelley v. Rinkle*,
      532 S.W.2d 947 (Tex. 1976).....................................................................................9

*Klocke v. Univ. of Texas at Arlington*,
      No. 4:17-CV-285-A, 2017 WL 6767393 (N.D. Tex. July 25, 2017) (McBryde,
      J.)............................................................................................................................11

*Lowell v. Hayes*,
      117 P.3d 745 (Alaska 2005)...........................................................................14, 17

*Lybrand v. Trask*,
      31 P.3d 801 (Alaska 2001).....................................................................................21

*Mack v. Nelson*,
      No. A-12-CV-016-LY, 2012 WL 12874200 (W.D. Tex. July 6, 2012) .................10

*Mahan v. Arctic Catering, Inc.*,
      133 P.3d 655 (Alaska 2006).....................................................................................23

*Matthews v. City of Tyler, Texas*,
      No. 6:15CV954, 2015 WL 10153135 (E.D. Tex. Nov. 20, 2015)...........12, 24, 25

*Matthews v. Wozencraft*,
      15 F.3d 432 (5th Cir. 1994) ...........................................................................24, 25

*Mayfield v. Fulhart,*
    444 S.W.3d 222 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ................................10

*McCutcheon v. State,*
    746 P.2d 461 (Alaska 1987).................................................................................9

*McGrew v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,*
    106 P.3d 319 (Alaska 2005)...............................................................................21

*McIlvain v. Jacobs,*
    794 S.W.2d 14 (Tex.1990).................................................................15, 18, 19, 20

*Musser v. Smith Protective Servs.,*
    723 S.W.2d 653 (Tex.1987)................................................................................14, 15

*Nath v. Tex. Children's Hosp.,*
    446 S.W.3d 355 (Tex. 2014).................................................................................23

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.,*
    512 F.3d 137 (5th Cir. 2007) ...........................................................*passim*

*Neely v. Wilson,*
    418 S.W.3d 52 (Tex. 2013).................................................................................16, 17

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964)............................................................................................17

*Norris v. Hearst Trust,*
    500 F.3d 454 (5th Cir. 2007) ...............................................................................3, 4, 5

*Oliphint v. Richards,*
    167 S.W.3d 513 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ................................22

*Olivit v. City & Borough of Juneau,*
    171 P.3d 1137 (Alaska 2007)..............................................................................16

*Pedersen v. Blythe,*
    292 P.3d 182 (Alaska 2012)................................................................................18

*Roberts v. City of Fairbanks,*
    No. 4:17-CV-0034-HRH, 2018 WL 5259453 (D. Alaska Oct. 22, 2018),
    *appeal docketed,* No. 18-35938 (9th Cir. Nov. 1, 2018) ......................................12

*Rogers v. Dallas Morning News, Inc.,*
    889 S.W.2d 467 (Tex. App.—Dallas 1994, writ denied) ......................................15

*Sparks v. Reneau Publ'g., Inc.,*
    245 F.R.D. 583 (E.D. Tex. 2007).........................................................................23

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) ................................................................................17

*Standard Fruit & Vegetable Co. v. Johnson*,
  985 S.W.2d 62 (Tex. 1998) .................................................................21, 22

*State v. Carpenter*,
  171 P.3d 41 (Alaska 2007) ......................................................................21

*Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*,
  325 F. Supp. 3d 728 (N.D. Tex. 2018) (Scholer, J.), *appeal docketed*, No. 18-
  10998 (5th Cir. Aug. 1, 2018) ..................................................................5

*Tubbs v. Nicol*,
  675 F. App'x 437 (5th Cir. 2017) (per curiam) ........................................11

*Turner v. KTRK Television, Inc.*,
  38 S.W.3d 103 (Tex. 2000) ...........................................................14, 17, 23

*Twyman v. Twyman*,
  855 S.W.2d 619 (Tex. 1993) ....................................................................21

*United States v. Cox*,
  705 Fed. Appx. 573 (9th Cir. 2017), *cert. denied*, 138 S.Ct. 2625 (June 11,
  2018) (mem. op.) ................................................................................5, 20

*Vafaiyan v. Target, Inc.*,
  No. 3-06-CV-1619-K, 2008 WL 3558968 (N.D. Tex. Aug. 12, 2008)
  (Kinkeade, J.) .....................................................................................12, 14

*Washington v. City of Arlington Police Department*,
  No. 02-17-00337-CV, 2018 WL 4782160 (Tex. App—Fort Worth October 4,
  2018, no pet. filed) ................................................................................13

*WFAA–TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex.1998) ...........................................................14, 15, 16, 17

*Woolley v. Clifford Chance Rogers & Wells*,
  No. 3:01–CV–2185–D, 2004 WL 57215 (N.D. Tex. Jan. 5, 2004) ..................8, 9

**Statutes**

18 U.S.C. § 1114 ..........................................................................................13, 19

18 U.S.C. § 1117 ..........................................................................................13

26 U.S.C. § 5861 ..........................................................................................19

26 U.S.C. § 5871 ..........................................................................................19

Tex. Civ. Prac. & Rem.Code Ann. § 73.001 ........................................................14, 17

Tex. Civ. Prac. & Rem. Code § 16.002(a) ......................................................9, 10, 11

Tex. Civ. Prac. & Rem. Code § 27.001(7)(D) ..........................................................16

Tex. Civ. Prac. & Rem. Code § 73.055 ....................................................................11

Other Authorities

Alaska R. Civ. P. 82 ..............................................................................................8, 25

5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1366 .....................1

FED. R. CIV. P. 5 .......................................................................................................26.

FED. R. CIV. P. 8 ......................................................................................................6, 7

FED. R. CIV. P. 12(b)(6) ....................................................................................1, 6, 7, 25

FED. R. CIV. P. 56 .......................................................................................................7

FED. R. EVID. 201 .............................................................................................. *passim*

COMES NOW, Defendant BenBella Books, Inc. ("BenBella") and files its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), ("the Motion").   In support, BenBella would respectfully show this Court as follows:

## I.       SUMMARY OF THE ARGUMENTS

Plaintiff's claims for defamation, intentional inflection of emotional distress, and misappropriation of name, image, and likeness arise from Defendant's book, *The Blood of Patriots: How I Took Down an Anti-Government Militia with Beer, Bounty Hunting, and Badassery*,[1] which accurately recounts how Plaintiff was arrested, tried, and convicted for (among other criminal charges) conspiring to murder federal agents, including law enforcement personnel, and state judges.   Plaintiff, a convicted criminal, does not have the right to pursue civil claims against Defendant for the purpose of undermining the validity of his criminal conviction.

Because Plaintiff's defamation and intentional infliction of emotional distress claims are founded solely on the allegedly defamatory publication, the one-year statute of limitations for libel governs all those claims.   Plaintiff did not file his lawsuit against Defendant until well after expiration of the limitations period and, therefore, those claims are time-barred.   Even if it had been timely filed, Plaintiff's defamation claim is without merit because: (1) he is a public figure, yet he pleads no facts that BenBella acted with the requisite malice—or even negligence—to harm him by publishing *The Blood of Patriots*; and (2) the statements are substantially true. Moreover, Plaintiff failed to comply with Texas' Defamation Mitigation Act, which requires a

---

[1] *See* Exh. 1, WILLIAM FULTON & JEANNE DEVON, THE BLOOD OF PATRIOTS: HOW I TOOK DOWN AN ANTI-GOVERNMENT MILITIA WITH BEER, BOUNTY HUNTING, AND BADASSERY (2017) (hereinafter "*The Blood of Patriots*").   Defendant requests that the Court take judicial notice of Exh. 1.   *See* Fed. R. Evid. 201(b); *In re Katrina Canal Breaches Consol. Lit.*, 533 F.Supp.2d 615, 631-32 (E.D. La. 2008) (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1366) ("items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief" may be considered in a 12(b)(6) motion)).

defamation plaintiff to request in writing a retraction of the libelous statements prior to asserting a claim.

Plaintiff's intentional infliction of emotional distress claim lacks merit because it is based entirely on the same facts supporting the alleged defamation.  Plaintiff cannot avoid the statute of limitations by repackaging his meritless defamation claim as another cause of action with a longer statute of limitations—here, intentional, infliction of emotional distress.  In any event, Plaintiff pleads no facts independent of his defamation claim that would support a separate claim for intentional infliction of emotional distress.

Finally, Plaintiff's misappropriation of name and likeness claim fails because the subject matter of *The Blood of Patriots*—Plaintiff's (partial) life story—cannot, as a matter of law, be misappropriated, and Defendant has not published or misappropriated his image.  Thus, all of Plaintiff's claims against BenBella should be dismissed.

## II.       BACKGROUND FACTS

Plaintiff Francis Schaeffer Cox is a self-described "well-known Second Amendment lobbyist"[2] and "well respected local political voice with popular support."[3]  Prior to his arrest and criminal convictions that form the basis for the subject matter of *The Blood of Patriots*, Plaintiff "won 38% of the vote in a[n] [Alaska] House election."[4]  Plaintiff purports to be the: (1) "leader of the Alaska Peacemaker Militia;" (2) "Secretary of Defense for the Alaska Assembly Post," and (3) "Commander-in-Chief of the several States of the United States of America."[5]

---

[2] Civil Action Complaint, Doc. 3 ¶ 8.

[3] Complaint ¶ 20.

[4] Complaint ¶ 8.

[5] *See* Exh. 3*,* Third Superseding Indictment, Doc. 239, Case No. 3:11-CR-00022-RJD (D. Alaska, Jan. 1, 2010), App. at 292-93.  Defendant requests that the Court take judicial notice of Exhibit 3.  *See* Fed. R. Evid. 201(b); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *Cleven v. Mid-Am.*

The Alaska Peacemaker Militia and the Alaska Assembly Post held a collective belief that "at some undetermined and unknown point in the future they would be compelled to take up arms against the government, be sufficiently armed and equipped to sustain a take-over of the 'government' or become a new government in the event of a 'government collapse.' "[6]

Plaintiff alleges that he was the target of a retaliatory Federal Bureau of Investigation ("FBI") investigation in response to his public statements accusing "state and federal authorities" of "suppl[ying] children for sex to a number of state and federal officials in exchange for those officials [sic] cooperation in concealing the ongoing illicit drug trafficking activities of the State Wide Drug Task Force."[7]   *The Blood of Patriots* author (and BenBella's co-defendant in this lawsuit) William Fulton ("Fulton") worked as an undercover informant in the FBI investigation of Plaintiff.[8]   Plaintiff alleges that Fulton was tasked by the FBI with "convinc[ing] Plaintiff to commit large-spread violence" against his adversaries in the government,[9] and that Fulton, in concert with the FBI, acted to "illegally entrap [ ]"[10] Plaintiff using techniques such as threats of violence against Plaintiff and his children.[11]

The FBI investigation revealed that Plaintiff, as part of his participation in the Alaska Peacemaker Militia and the Alaska Assembly Post "acquired and sought to acquire illegal firearms, machine guns, destructive devices and firearms silencers," and "developed a list of individuals employed by the state and federal government, including home addresses, so that

---

*Apartment Communities, Inc.*, No. 1:16-CV-820-RP, 2017 WL 4276534, at *3 (W.D. Tex. Sept. 26, 2017) (taking judicial notice of the City of Austin's website in analyzing a 12(b)(6) motion).

[6] Exh. 3 at App. 295.

[7] Complaint ¶¶ 8-10.

[8] Complaint ¶¶ 4, 13.

[9] Complaint ¶ 13.

[10] Complaint ¶ 7.

[11] Complaint ¶¶ 11-12, 14, 18.

Plaintiff and others could kill them in the event of a 'government collapse' "or Plaintiff's arrest.[12]  Plaintiff and the militia members also created a plan to kill two government employees (specifically, law enforcement, judges, or district attorneys) in the event that one of them was killed by the government,"[13] which they referred to as the "2-4-1 plan,"[14] and took "overt acts" in furtherance of the conspiracy.[15]  Plaintiff was arrested in March 2011 by the FBI.[16]

After a trial by a jury of his peers, Plaintiff was found guilty and convicted of:  (1) conspiracy to possess unregistered silencers and destructive devices; (2) possession of unregistered silencers and destructive devices; (3) possession of an unregistered silencer; (3) possession of an unregistered machine gun; (4) illegal possession of a machine gun; (5) making of a silencer; (6) carrying firearms during a crime of violence; (7) possession of unregistered destructive devices; and (8) conspiracy to murder an Officer of the United States; (9) solicitation to murder an Officer of the United States.[17]  After an appeal, the Ninth Circuit affirmed Plaintiff's conviction for conspiracy to murder an Officer of the United States and reversed his conviction for solicitation to murder an Officer of the United States.[18]  The remaining

---

[12] Exh. 3 at App. 295.

[13] Exh. 3 at App. 295, 300.

[14] Exh. 3 at App. 300.

[15] Exh. 3 at App. 308-09.

[16] Complaint ¶ 20-22.

[17] Exh. 4, Verdict Form, Doc. 432, Case No. 3:11-CR-00022-RJD (D. Alaska, Jun. 8, 2012), App. at 316-319; Exh. 5, Judgment in a Criminal Case, Doc. 561, Case No. 3:11-CR-00022-RJD (D. Alaska, Jan. 8, 2013) (Bryan, J.), App. at 321-22.  Defendant requests that the Court take judicial notice of Exhibits 4 and 5.  *See* Fed. R. Evid. 201(b); *Norris*, 500 F.3d at 461 n.9; *Cleven*, 2017 WL 4276534, at *3.

[18] *United States v. Cox*, 705 Fed. Appx. 573, 575 (9th Cir. 2017), *cert. denied*, 138 S.Ct. 2625 (June 11, 2018) (mem. op.).  Defendant requests that the Court take judicial notice of the Ninth Circuit's holding in Plaintiff's criminal appeal.  *See* Fed. R. Evid. 201(b); *Norris*, 500 F.3d at 461 n.9.

convictions stand. Plaintiff's *Petition for Certiorari* to the Supreme Court of the United States was denied,[19] and time to appeal his other convictions has passed.

Plaintiff is currently incarcerated in federal prison in Terre Haute, Indiana.[20] Plaintiff maintains a website from prison on which he touts his "Political Activism" and describes what Plaintiff believes to be violations of his due process rights.[21]

Fulton, co-authored the book *The Blood of Patriots*,[22] which accurately recounts how Plaintiff was arrested, tried, and convicted for the criminal charges. *The Blood of Patriots* was published on September 19, 2017[23] by BenBella, a publishing company headquartered in Dallas, Texas.[24] Plaintiff filed this lawsuit on December 20, 2018, alleging defamation, defamation by implication, defamation per se, intentional infliction of emotional distress, and misappropriation of name or likeness against Defendants Fulton and BenBella.[25]

---

[19] *Cox v. United States*, 138 S.Ct. 2625 (June 11, 2018) (mem. op.). Defendant requests that the Court take judicial notice that the Supreme Court of the United States' denied Plaintiff's petition for certiorari in his criminal appeal. *See* Fed. R. Evid. 201(b); *Norris*, 500 F.3d at 461 n.9.

[20] Complaint ¶ 3.

[21] *See* Schaeffer Cox, Free Schaeffer Center, SCHAEFFER COX FOR STATE HOUSE, *http://www.schaefferforstatehouse.com/*, (last updated December 13, 2018); Schaeffer Cox, Letters from Isolation, SCHAEFFER COX, PRISONER FOR LIBERTY, https://freeschaeffer.com/blog/, (last updated January 28, 2019); Schaeffer Cox, Media, SCHAEFFER COX, PRISONER FOR LIBERTY, https://freeschaeffer.com/gallery/ (last viewed February 1, 2019) (hereinafter "Plaintiff's Websites"). Defendant requests that the Court take judicial notice of Plaintiff's Websites. *See* Fed. R. Evid. 201(b); *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, 325 F. Supp. 3d 728, 746 n. 3 (N.D. Tex. 2018) (Scholer, J.) (taking judicial notice of material on defendants' website as a source whose accuracy cannot be reasonably questioned by defendants), *appeal docketed*, No. 18-10998 (5th Cir. Aug. 1, 2018).

[22] Exh. 2, Copyright Registration for *The Blood of Patriots: How I Took Down an Anti-Government Militia with Beer, Bounty Hunting, and Badassery*, UNITED STATES COPYRIGHT OFFICE, at App. 289. Defendant requests that the Court take judicial notice of Exhibit 2. *See* Fed. R. Evid. 201(b); *Norris*, 500 F.3d at 461 n.9; *Cleven*, 2017 WL 4276534, at *3.

[23] Exh. 2 at App. 289.

[24] Complaint ¶ 4.

[25] *See generally* Complaint.

## III.      ARGUMENT

### A.      Legal Standards

Although a complaint need not contain "detailed factual allegations," it must include facts sufficient to establish the plausibility of the claims asserted, raising the "right to relief above the speculative level."[26] A complaint that does no more than provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" should be dismissed under Rule 12(b)(6).[27]

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).[28] The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[29] The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement;" however, "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss.[30]

The plaintiff must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] "[W]here the well-pleaded

---

[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) ("Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face[.]'") (quoting *Twombly*, 550 U.S. at 547) ).

[27] *Twombly*, 550 U.S. at 555.

[28] *Iqbal*, 556 U.S. at 678-79.

[29] *Id*. at 679.

[30] *Id*. at 678.

[31] *Id*.

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[32] The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendant "across the line from conceivable to plausible."[33]

Although dismissal under Federal Rule of Civil Procedure 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings or in sources for which the court may take judicial notice.[34] The statute of limitations is an affirmative defense.[35] Thus, statute of limitations may properly be asserted in a Rule 12(b)(6) motion to dismiss.[36]

When evaluating a Rule 12(b)(6) motion, the Court may judicially notice[37] a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.[38] The Fifth Circuit has held that, when deciding

---

[32] *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).

[33] *See id.* at 679, 683.

[34] *Nationwide*, 512 F.3d at 141-47 (affirming district court's dismissal pursuant to Rule 12(b)(6) on the ground that the applicable state statute of limitations barred plaintiff's defamation claim); *see also Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) (dismissal under Rule 12(b)(6) is proper if an affirmative defense is evident on judicial notice).

[35] FED. R. CIV. P. 8(c)(1).

[36] *Nationwide*, 512 F.3d at 141-47.

[37] Throughout this Motion, Defendant asks the Court to take judicial notice of information that is public record. If the Court finds that consideration of any of the documents referenced herein would require the Court to treat Defendant's Motion as a Motion for Summary Judgment under Federal Rule of Civil Procedure 56, Defendant withdraws its request for judicial notice of those documents.

[38] Fed. R. Evid. 201(b).

motions to dismiss, courts may take judicial notice of matters of public record.[39]  "The same is true for various types of exhibits that are attached to the pleading . . . and items of unquestioned authenticity that are referred to in the challenged pleading and are "central' or "integral' to the pleader's claim for relief."[40]

## B.    Plaintiff's Defamation, Defamation Per Se, and Defamation by Implication Claims Fail Because They Are Time Barred Under Texas Law

### 1.    The Texas Statute of Limitations Applies to Plaintiff's Claims

Plaintiff invokes Texas law in support of his defamation and tort claims and cites multiple Texas and Fifth Circuit opinions throughout his Complaint.[41]  Defendant agrees that Texas law applies to Plaintiff's claims.[42]  In diversity cases "[t]he Fifth Circuit has held that Texas applies its own statute of limitations, regardless what substantive law applies."[43] This is because "[u]nder Texas law, statutes of limitations are considered to be procedural, not substantive."[44]  "Texas applies the forum's law for procedural issues . . . and statutes of limitation are considered procedural."[45]  Thus, Texas' statute of limitations applies to Plaintiff's

---

[39] *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[40] *In re Katrina Canal*, 533 F.Supp.2d 615 at 631-32.

[41] *See* Complaint ¶¶ 71, 80, 81, 93.

[42] If the laws of the resident states of Plaintiff and Defendant are substantially identical, the Court can determine the legal viability of a claim without conducting a choice of law analysis.  *See Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir.2001) (evaluating motion to dismiss under the laws of both potentially applicable states). There is no material conflict between the substantive laws of Texas and Alaska as it relates to Plaintiff's claims. However, should the Court find that Alaska is the applicable substantive law and dismiss Plaintiff's claims under Alaska law, BenBella pleads in the alternative for an award of attorneys' fees.  *See* Alaska R. Civ. P. 82(a)-(b).

[43] *Woolley v. Clifford Chance Rogers & Wells*, No. 3:01–CV–2185–D, 2004 WL 57215, at *3–5 (N.D. Tex. Jan. 5, 2004) (citations omitted).

[44] *Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F.Supp.2d 698, 708 (N.D. Tex. Aug. 29, 2011) (Boyle, J.) (applying Texas statute of limitations to Plaintiff's common law tort claims where the court exercised diversity jurisdiction).

[45] *Wooley*, 2004 WL 57215 at *3 (citing *Baker and Hughes, Inc. v. Keco R & D, Inc.* ., 12 S.W.3d 1, 4 (Tex.1999)); *Franco v. Allstate Ins.* Co., 505 S.W.2d 789, 793 (Tex.1974); *California v. Copus*, 158 Tex. 196, 309 S.W.2d 227, 230 (1958).

claims, including its one-year statute of limitations for defamation.  Plaintiff asserts no basis for equitable tolling under Texas law.

Plaintiff's defamation claims must be dismissed because the limitations period that governs them expired months before he filed the Complaint.  A one-year statute of limitations governs libel claims in Texas, running from the date of first publication of the allegedly defamatory statement.[46]  The one-year period commences upon publication of the statement.[47]  The discovery rule, which defers the statute of limitations, does not apply where the publication is made through a public medium.[48]

### 2.    The Single Publication Rule Applies to *The Blood of Patriots*

Texas applies[49] the "single publication rule," to a libel claim based on mass media publication as follows:

> No person shall have more than one cause of action for damages for libel . . . or any other tort founded upon any single publication or exhibition or utterance, such as any one edition or issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture.  Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.[50]

When the single publication rule applies, a libel action accrues upon publication.[51]  Publication is complete on "the last day of the mass distribution of copies of the printed matter" because that is

---

[46] Tex. Civ. Prac. & Rem. Code § 16.002(a); *Nationwide*, 512 F.3d at 142.

[47] *Nationwide*, 512 F.3d at 142.

[48] *See Kelley v. Rinkle*, 532 S.W.2d 947, 949 (Tex. 1976).

[49] The Alaska Supreme Court has discussed the single publication rule and assumed its application to multiple publications without expressly adopting it.  *See McCutcheon v. State*, 746 P.2d 461, 464-65 (Alaska 1987).

[50] *Holloway v. Butler*, 662 S.W.2d 688, 690 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.).

[51] *See id.* at 692.

the day "when the publishers, editors and authors have done all they can to relinquish all right of control, title and interest in the printed matter."[52]

### 3. The Single Publication Rule Applies to the Internet Publications

For libel actions based on internet publications, publication is complete upon the posting of a statement to the Internet.[53] "A statement electronically located on a server which is called up when a web page is accessed, is no different from a statement on a paper page in a book lying on a shelf which is accessed by the reader when the book is opened."[54]

### 4. The Statute of Limitations Bars Plaintiff's Defamation Claims Because *The Blood of Patriots* was not Altered or Republished

Plaintiff did not file this action until December 20, 2018.[55] Thus, Plaintiff's libel claim survives the statute of limitations only if the allegedly actionable statements were published on or after December 20, 2017, one year prior to the date Plaintiff filed this lawsuit.[56] Under well-established Texas law, Plaintiff's libel claim is barred by limitations because the book was first published in both print and digital form on September 19, 2017[57]—well more than one year before the filing of this lawsuit on December 20, 2017. Plaintiff's Complaint does not allege that

---

[52] *See id.*

[53] *Nationwide,* 512 F.3d at 145-46 (applying Texas law and deciding that the single publication rule applies to internet publication of newspaper article); *Mayfield v. Fulhart,* 444 S.W.3d 222, 228-29 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (agreeing with *Nationwide* and applying the single publication rule to a television report posted on the internet); *Cruz v. Van Sickle,* 452 S.W.3d 503, 518 n.20 (Tex. App.—Dallas 2014, no pet.) ("[W]e also find the Fifth Circuit's reasoning [in *Nationwide*] persuasive."); *Mack v. Nelson,* No. A-12-CV-016-LY, 2012 WL 12874200, at *3 (W.D. Tex. July 6, 2012) (agreeing with the Fifth Circuit's reasoning in *Nationwide* and applying the single publication rule to an online publication of a print magazine).

[54] *Nationwide,* 512 F.3d at 144.

[55] *See generally* Complaint.

[56] Tex. Civ. Prac. & Rem. Code § 16.002(a).

[57] Exh. 2 at App. 289.

the book was altered or republished.[58]   Accordingly, Plaintiff's defamation claims should be

dismissed with prejudice.[59]

**C.      Plaintiff's Defamation Claims Must Be Dismissed as Matter of Law Because He Failed to Comply with Texas' Defamation Mitigation Act**

Texas' Defamation Mitigation Act ("DMA") requires a defamation plaintiff to request in

writing a retraction of the libelous statements prior to asserting a claim.[60]   Under the DMA, a

person may maintain an action for defamation only if: (1) the person has made a timely and

sufficient request for a correction, clarification, or retraction from the defendant; or (2) the

defendant has made a correction, clarification, or retraction.[61]   Further, such a request is timely

only if it is made during the statute of limitations period for commencing a defamation action.[62]

Plaintiff does not allege that he requested a correction, clarification, or retraction within the one

year statute of limitations.[63]   Accordingly, his defamation claim must be dismissed as a matter of

law.[64]

**D.      Plaintiff's Defamation and Intentional Infliction of Emotional Distress Claims Fail Because they Implicate the Validity of His Criminal Conviction**

Even if Plaintiff's defamation claims were not barred by the statute of limitations, they

(and plaintiff's IIED claim) fail because they are premised on the facts underlying his criminal

---

[58] *See generally* Complaint.

[59]   *See* Tex. Civ. Prac. & Rem. Code §16.002(a); *Nationwide*, 512 F.3d at 143, 146; *Holloway*, 662 S.W.2d at 692.

[60] *See* Tex. Civ. Prac. & Rem. Code § 73.055.

[61] Tex. Civ. Prac. & Rem. Code § 73.055(a).

[62] Tex. Civ. Prac. & Rem. Code § 73.055(b).

[63] *See generally* Complaint.

[64] *See Tubbs v. Nicol*, 675 F. App'x 437 (5th Cir. 2017) (per curiam) (upholding district court's decision to grant summary judgment on defamation claim, which "fail[ed] as a matter of law" because plaintiff did not comply with § 73.055(a)); *see also Klocke v. Univ. of Texas at Arlington*, No. 4:17-CV-285-A, 2017 WL 6767393, at *2 (N.D. Tex. July 25, 2017) (McBryde, J.); *but see Inge v. Walker*, No. 3:16-CV-0042-B, 2017 WL 4838981, at *3 (N.D. Tex. Oct. 26, 2017) (Boyle, J.) (failure to follow §73.055(a)(1) does not require dismissal for failure to state a claim).

conviction. An inmate plaintiff's tort claims based on facts that, if true, would undermine the validity of his criminal conviction are not legally cognizable unless the plaintiff can show that the conviction was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.[65] *Heck* directs this Court to first "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction[s] or sentence[s.]"[66]

Pursuant to *Heck,* a convicted criminal does not have the right to pursue a civil suit for state law claims of defamation and intentional infliction of emotional distress if those claims imply the invalidity of his criminal conviction.[67] The allegedly defamatory statements that Plaintiff seeks to litigate (which also form the basis for Plaintiff's IIED claim) are related to his criminal arrest and convictions, including conspiracy to murder federal agents.[68] If these

---

[65] *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (analyzing a federal claim under 42 U.S.C. § 1983); *accord Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (finding that *Heck* is applicable to state law claims).

[66] *Heck*, 512 U.S. at 487.

[67] *See Cooper v. Trent*, 551 S.W.3d 325, 334–35 (Tex. App.—Houston [14th Dist.] 2018), *review denied* (Jan. 25, 2019) (applying *Heck* and upholding dismissal of inmate's IIED claim)); *Matthews v. City of Tyler, Texas*, No. 6:15CV954, 2015 WL 10153135, at *1-2 (E.D. Tex. Nov. 20, 2015), *report and recommendation adopted*, No. 6:15CV954, 2016 WL 633943 (E.D. Tex. Feb. 17, 2016) (applying *Heck* and dismissing IIED claim)); *Vafaiyan v. Target, Inc.*, No. 3-06-CV-1619-K, 2008 WL 3558968, at *4 (N.D. Tex. Aug. 12, 2008) (Kinkeade, J.) (applying *Heck* and finding that plaintiff was prohibited from pursuing a state law defamation claim arising from his arrest because he would have "no good reputation to be damaged" unless his theft conviction was overturned); *see also Roberts v. City of Fairbanks*, No. 4:17-CV-0034-HRH, 2018 WL 5259453, at *4 (D. Alaska Oct. 22, 2018), *appeal docketed*, No. 18-35938 (9th Cir. Nov. 1, 2018) (applying *Heck* and dismissing IIED claim under Alaska law).

[68] *Compare* Ex. 5 at App. 322 (convicting Plaintiff of conspiracy to commit murder pursuant to 18 U.S.C. §§ 1114, 1117; 18 U.S.C. § 1114 (murder or attempted murder of an officer or employee of the United States engaged in the performance of official duties); 18 U.S.C. § 1117 (conspiracy to murder); *with* Complaint ¶ 36 ("[W]hat we need is not a third political party, it's a second government. And if we can't take down this one outright, then it needs to be replaced one branch at a time, beginning with the judicial."); Complaint ¶ 38 ("And then, Vernon brought up Schaeffer Cox's plan to kill judges. I had hoped that plan was ancient history, but I was wrong."); Complaint ¶ 51 ("After the call, the setup was complete. Specific illegal weapons had been ordered, these idiots knew that what they wanted was illegal and didn't give a shit . . . Schaeffer Cox had given his blessing."); Complaint ¶ 57 ("I believe that it is

statements are found to be defamatory (i.e., not true or substantially true) in this civil proceeding, it would, in effect, prove that Plaintiff's criminal convictions were invalid.

Plaintiff, who alleges that he was convicted "for simply believing in the original meaning of the Second Amendment," and that his conviction "will set a sweeping new precedent allowing for the wholesale round up of those who have not committed any crimes," seeks to re-litigate his criminal trial in a civil forum.[69] Because "the facts [plaintiff] seeks to litigate regarding his . . . tort claims are facts essential to his conviction . . . and that conviction has not been invalidated," Plaintiff's claims have no basis in law and must be dismissed.[70]

Moreover, Plaintiff has no damages for emotional distress other than those which "necessarily result[ ] from [his] confinement and criminal conviction."[71]  It was Plaintiff's illegal conduct, which resulted in his conviction—rather than BenBella's publication of an account of how Plaintiff was investigated, arrested, tried, and convicted for conspiring to murder federal agents—that was the cause in fact of his "severe emotional distress" and alleged harm to his

---

absolutely morally allowable if they were to come and arrest one of us, for the three of us to go kick in the judge's door and the trooper's . . . If they kill one of us, we go kill two of them.").

[69] *Compare Gentry v. Houston Police Dep't, No.* 14-08-01094-CV, 2009 WL 10453387, at *2 (Tex. App.—Houston [14th Dist.] July 16, 2009, no pet.) ("The claims in appellant's original petition focus on his indictment and circumstances leading to his final criminal conviction.  In essence, appellant is attempting to appeal his criminal conviction in civil court.  Where a conviction has not been overturned, a criminal defendant cannot recover damages resulting from his conviction.") *with* Complaint ¶ 6 ("[Plaintiff's] injuries are proximately related to the conduct of Defendants, each and every one of them acting in concert jointly and severally."); Complaint ¶ 7 ("Plaintiff Cox's unjust and illegal conviction remains on appeal . . . "); Complaint ¶ 7 ("Plaintiff Cox was set up and illegally entrapped . . . exculpatory Brady material and other material evidence was illegally withheld by federal prosecutors to wrongfully convict Plaintiff Cox."); Complaint ¶ 22 ("Plaintiff was arrested and put on trial for 'conspiracy against the government.' . . . The audio recording of Plaintiff repeatedly rejecting violence were hidden from the jury"); Complaint ¶ 23 ("AUSA Steve Skrocki . . . coached his witnesses to lie, then vouched for those lies in his closing arguments to the jury.")

[70] *Washington v. City of Arlington Police Department*, No. 02-17-00337-CV, 2018 WL 4782160 (Tex. App—Fort Worth October 4, 2018, no pet. filed) (affirming dismissal of IIED claim) (citing *Cooper*, 551 S.W.3d at 331–36)).

[71] *See Cooper*, 551 S.W. at 334–35; Complaint ¶ 7 ("Plaintiff Schaeffer Cox is currently a 'political prisoner' held in an old and antiquated U.S. maximum security prison").

"reputation, his business, and person and his calling."[72]  Thus, Plaintiff's defamation and intentional infliction of emotional distress claim should be dismissed with prejudice.

### E.  Plaintiff's Complaint Fails to Allege Actionable Defamation, Defamation Per Se, and Defamation by Implication Claims

#### 1.  Defamation Standard

To maintain a defamation action, Plaintiff must prove that BenBella: (1) published a statement of fact; (2) that was defamatory concerning the plaintiff; (3) while acting with actual malice regarding the truth of the statement if the plaintiff was a public official or public figure, or while acting with negligence regarding the truth of the statement if the plaintiff was a private individual.[73]  Libel is defamation in written or other graphic form.[74]  Whether the statement at issue is capable of defamatory meaning is a question of law for the Court.[75]  "The court construes the statement as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement."[76]

Without regard to whether the plaintiff is a public or private figure, he must show falsity in order to recover damages from a media defendant.[77]  "The court construes the statement as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence

---

[72] Complaint ¶¶ 67, 76, 85; *Cooper*, 551 S.W.3d at 334–35 (as to IIED claim); *see also Vafaiyan*, 2008 WL 3558968, at *4 (plaintiff convicted of theft has "no good reputation to be damaged" in matters related to the theft).

[73] *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *accord Lowell v. Hayes,* 117 P.3d 745, 751 (Alaska 2005) ("a public figure can win damages for defamation only where he can prove that the defendant published the defamatory statement at issue with actual malice.").

[74] Tex. Civ. Prac. & Rem.Code Ann. § 73.001.

[75] *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *Musser v. Smith Protective Servs.*, 723 S.W.2d 653, 654–55 (Tex.1987).

[76] *Musser*, 723 S.W.2d at 655.

[77] *Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467, 472 n. 7 (Tex. App.—Dallas 1994, writ denied) (citing *McIlvain v. Jacobs*, 794 S.W.2d 14, 15 (Tex.1990)).

would perceive the entire statement."[78]  "[P]ublications alleged to be defamatory must be viewed as a whole—including accompanying statements, headlines, pictures, and the general tenor and reputation of the source itself."[79]

### 2.     Plaintiff Fails to Plead Actual Malice or Even Negligence

In the context of defamation claims, there are two types of "public figures." "All-purpose" or "general purpose" public figures are those "who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts."[80]  In contrast, a "limited-purpose" public figure is a public figure only "for a limited range of issues surrounding a particular public controversy."[81]

Plaintiff concedes that he is "a well-known Second Amendment lobbyist who had won 38% of the vote in a [Alaska] House election . . ." and "a well-respected local political voice with popular support."[82]  As a candidate who ran for Alaska office, Plaintiff is a public figure and, thus matters about his conduct are a public concern.[83]

Alternatively, Plaintiff is a public figure because he "thrust [himself] to the forefront of particular public controvers[y] in order to influence the resolution of the issues involved.[84]  To determine whether a defamation claimant is a limited-purpose public figure, Texas courts apply the following three-part test: (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are

---

[78] *Musser,* 723 S.W.2d at 655; *Rogers*, 889 S.W.2d at 472 n. 7.

[79] *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005).

[80] *WFAA-TV*, 978 S.W.2d at 571 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).

[81] *Id*.

[82] Complaint ¶¶ 8, 20.

[83] *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(D); *Channel 4, KGBT v. Brig*gs, 759 S.W.2d 939 (Tex. 1988) (treating a candidate for State Representative as a "public figure" for defamation purposes).

[84] *See Neely v. Wilson*, 418 S.W.3d 52, 71 (Tex. 2013).

likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.[85]

Here, Plaintiff alleges that he became a target of the FBI because he "openly . . . accus[ed]" state and federal authorities of drug trafficking and child prostitution" in public statements.[86]  Plaintiff claims that these public comments and his attempts to expose corruption in "The Statewide Drug Taskforce" led to the FBI investigation that resulted in Plaintiff's arrest and his subsequent criminal conviction.[87]  In other words, Plaintiff had "already thrust [himself] to the forefront" of a public controversy over alleged corruption by public officials and "invite[d] attention and comment" on those issues before publication of *The Blood of Patriots.*[88]  The press coverage of Plaintiff's trial centers on the public controversy over his allegations of government corruption that, according to Plaintiff, resulted in his arrest and conviction.[89]  Even today, Plaintiff maintains a website from prison on which he touts his "Political Activism" and describes what Plaintiff believes to be violations of his due process rights.[90]

---

[85] *Id.* at 70 (citing *WFAA-TV*, 978 S.W.2d at 571).  Alaska law is materially similar, but does not require that the alleged defendant need not have a tangential role in the matter of public interest for his speech to be protected.  *See Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1147 (Alaska 2007) ("Under the Alaska Constitution, a defamatory statement may be conditionally privileged if it concerns a matter of public interest. We have stated that there is a paramount public interest permitting persons to speak or write freely without being restrained by the possibility of a defamation action. Therefore, speech on matters of public safety is [conditionally] privileged.")

[86] Complaint ¶ 8.

[87] Complaint ¶¶ 9-10.

[88] *Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2013).

[89] *See* Suzanna Caldwell, *Judges hear appeal in Schaeffer Cox court case*, ANCHORAGE DAILY NEWS (August 16, 2007), https://www.adn.com/alaska-news/crime-courts/2017/08/16/judges-hear-appeal-in-schaeffer-cox-court-case/.  Defendant requests that the Court take judicial notice of this news article.  *See* Fed. R. Evid. 201(b); *Flax v. Potts*, 725 F. Supp. 322, 327 (N.D. Tex. 1989) (Mahon, J)., *aff'd and remanded*, 915 F.2d 155 (5th Cir. 1990) (taking judicial notice of a newspaper article)).

[90] *See* Free Schaeffer Center, *http://www.schaefferforstatehouse.com/*; Letters from Isolation, https://freeschaeffer.com/blog/.

16

To prevail on a cause of action for libel, a plaintiff who is a public figure must prove the defendant published a defamatory statement in writing or graphic form while acting with actual malice regarding the truth of the statement.[91]   To establish actual malice, a public figure must show that defendant made the allegedly defamatory statement with "knowledge that it was false or with reckless disregard of whether it was false or not."[92]   To establish reckless disregard, the public official or pubic figure must prove that defendant had serious doubts about the statement's truth.[93]   Here, Plaintiff's defamation claims are wholly conclusory as to the actual malice element. He recites no facts to establish that BenBella published any statements with malice or reckless disregard for the truth.[94]   In fact, Plaintiff does not even plead facts to establish that Defendant acted with negligence when publishing *The Blood of Patriots*.   Instead, he relies entirely on formulaic allegations that do not satisfy *Iqbal/Twombly*.[95]

### 3.      The Alleged Defamatory Statements Are Substantially True

Substantial truth of its publication is a defense to defamation available to media defendants.[96]   The test used in deciding whether the statement is substantially true involves consideration of whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in the mind of the average reader, than a truthful statement would have been.[97]   This

---

[91] *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (elements of libel); *WFAA-TV*, 978 S.W.2d at 571 (elements of libel as to public figure plaintiff); *accord Lowell*, 117 P.3d at 751 (requiring proof of actual malice in public figure cases).

[92] *See Turner* 38 S.W.3d at 134 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

[93] *Id.* (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

[94] Plaintiff alleges that Defendant Fulton harbors malice towards him. *See* Complaint ¶ 26. Plaintiff makes no allegations with respect to BenBella.  *See generally* Complaint.

[95] *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

[96] *McIlvain*, 794 S.W.2d at 16.

[97] *Id.*

evaluation involves looking at the "gist" of the statement.[98] A publication "with specific statements that err in the details but that correctly convey the gist of a story" is "substantially true."[99] If the underlying facts regarding the gist of the defamatory charge are undisputed, then the Court can disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law.[100] In a defamation case arising out of the same facts as a criminal case, statements that convey the "gist" of the plaintiff's arrest and conviction of a crime are substantially true.[101]

In this case, Plaintiff's claims fail because the crimes of which Plaintiff was convicted (for which BenBella requests that the Court take judicial notice) establish the truth or substantial truth of the alleged defamatory statements, as follows:

- ***"And then, Vernon brought up Schaeffer Cox's plan to kill judges. I had hoped that plan was ancient history, but I was wrong."***[102]

The "gist" of the statement is that Plaintiff had a plan to kill government and law enforcement personnel, which is true or substantially true[103] because Plaintiff convicted of conspiring to murder judges and other government officials.[104]

---

[98] *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017).

[99] *Id.*

[100] *Id.*

[101] *See Adi v. Houston Chronicle Publ'g. Co.*, No. 14–01–00213–CV, 2003 WL 61121 at *2 (Tex. App.—Houston [14th Dist.] Jan. 9, 2003, no pet.) (holding, in case arising out of same facts, defamation claim against newspaper for misstating exact date of arrest and amount of false claims filed was defeated as a matter of law by substantial truth of arrest and conviction for filing false insurance claims); *Pedersen v. Blythe*, 292 P.3d 182, 186 (Alaska 2012) (holding that plaintiff was collaterally estopped from litigating a civil defamation claim against the victims of his assault and battery because the victims' statements about plaintiff's crimes could not be false and defamatory in light of plaintiff's conviction).

[102] Complaint ¶ 38 (emphasis added).

[103] *See generally McIlvain*, 794 S.W.2d at 16; *Adi*, 2003 WL 61121 at *2

[104] *See* Exh. 5 at App. 322 (conviction for conspiracy to commit murder of federal officials under 18 U.S.C. §1114); Exh. 3 at App. 300-301 (indictment describing conspiracy as follows: "COX and others developed a     '2-4-1' plan that if COX or any militia members were killed then COX and the others would kill two other people (specifically law enforcement, judges, or district attorneys) in return.").

- ***"Schaeffer's looking to buy some pineapple grenades and thought maybe you might be able to get your hands on some. They ain't easy to come by, you know what I mean?"[105]***

Because Plaintiff was convicted of illegal possession of hand grenades,[106] the statement that he was looking to buy the hand grenades that he was ultimately convicted of possessing is true or substantially true.[107]

- ***"Specific illegal weapons had been ordered, these idiots knew that what they wanted was illegal and didn't give a shit, I [Defendant Fulton] gave them an opportunity to back out, which they didn't take, and Schaeffer Cox had given his blessing."[108]***

When viewed in context[109] of pages 196-200 of *The Blood of Patriots*, the "gist" of this statement is that Plaintiff had signed off on his associates Vernon and Olson acquiring illegal weapons. This statement is true or substantially true[110] because Plaintiff was found guilty of possessing illegal weapons.[111]

- ***"But two for one, 'two-forty-one,' that's how we can talk about it on the phone. . . . I think it's absolutely morally allowable that if they arrested Ken or me, to go in and arrest two of them. If they kill one of us, we go kill two of them.[112]***

The "gist" of the statements is that Plaintiff had a plan to kill judges, which is true because Plaintiff was convicted of conspiracy to commit murder, and the Ninth Circuit affirmed the conviction.[113]   The Supreme Court of the United States denied Certiorari and Plaintiff's

---

[105] Complaint ¶ 42(emphasis added).

[106] *See* Exh. 5 at App. 322 (conviction for possession of unregistered destructive devices under 26 U.S.C. §§ 5861(d) and 5871); Exh. 3 at App. 301-302, 304 (indictment describing Plaintiff's acquisition and possession of grenades).

[107] *See generally McIlvain*, 794 S.W.2d at 16; *Adi*, 2003 WL 61121 at *2

[108] Complaint ¶ 51(emphasis added).

[109] *See City of Keller*, 168 S.W.3d at 811 (defamatory statement must be viewed as a whole in context).

[110] *See generally McIlvain*, 794 S.W.2d at 16; *Adi*, 2003 WL 61121 at *2.

[111] Exh. 5 at App. 322 (convictions for possession of illegal weapons); Exh. 3 at App. 304-310 (indictment describing Plaintiff's acquisition and possession of unregistered or illegal weapons).

[112] Complaint ¶ 57.

[113] *See* Exh. 5 at App. 322; *United States v. Cox*, 705 Fed. Appx. at 575.

conviction is final.[114] The Indictment charges that as part of Plaintiff's conspiracy to murder, "COX and others developed a "2-4-1" plan that if COX or any militia members were killed then COX and the others would kill two other people (specifically law enforcement, judges, or district attorneys) in return."[115]

## F.      Plaintiff's Complaint Fails to Allege an Actionable Claim for Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, Plaintiff must meet the "exacting requirements" to demonstrate that: (1) BenBella acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) BenBella's actions caused Plaintiff emotional distress; and (4) the emotional distress suffered by Plaintiff was severe.[116]

A defendant's conduct is not extreme and outrageous just because it is tortious or otherwise wrongful.[117]   Liability for outrageous conduct should only be found "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilize community."[118] Here, Plaintiff's Complaint offers nothing more than "formulaic recitations of the elements" of intentional infliction of emotional distress, which are insufficient.[119]

---

[114] *See id.*

[115] *See* Exh. 3 at App. 300-301.

[116] *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993); *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 (Tex. 2005) (noting the "exacting requirements" to prove a claim for intentional infliction of emotional distress.  The elements are essentially the same under Alaska law; *McGrew v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 106 P.3d 319, 324 (Alaska 2005) (an action for IIED lies where:"(1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe.").

[117] *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001); *State v. Carpenter*, 171 P.3d 41, 58 (Alaska 2007) (even harmful conduct "characterized by 'malice' " is insufficient to make out an IIED claim if the conduct is not "extreme and outrageous.").

[118] *Twyman*, 855 S.W.2d at 621; *accord Lybrand v. Trask*, 31 P.3d 801, 803 n.4 (Alaska 2001).

[119] *See* Complaint ¶¶ 86-91; *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555-57).

### 1.   The Complaint Lacks Any Factual Allegations to Independently Support Plaintiff's Intentional Infliction of Emotional Distress Claim

The Texas Supreme Court has recognized that the tort of intentional infliction of emotional distress is a "'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."[120] "Thus, if the gravamen of a plaintiff's complaint is another tort, a claim for intentional infliction of emotional distress claim will not lie regardless of whether the plaintiff succeeds on, or even makes the alternate claim."[121] Accordingly, to maintain a claim for intentional infliction of emotional distress, Plaintiff must allege facts independent of his defamation claims.[122]

Here, Plaintiff merely incorporates the facts supporting his defamation claims and alleges that he "has suffered severe emotional distress" as result of "Defendants . . . publishing statements about Plaintiff which they knew or should have known to be false or misleading"[123] in support of his intentional infliction of emotional distress claim.  This complained-of conduct sounds in defamation.  Because there is a recognized tort action to remedy his alleged injury,

---

[120] *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *see also Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) (noting that the tort's "clear purpose" was "to supplement existing forms of recovery by providing a cause of action for egregious conduct" that might otherwise go unremedied).

[121] *Draker v. Schreiber*, 271 S.W.3d 318, 322 (Tex. App.—San Antonio 2008, no pet.).

[122] *See id.* at 323; *Oliphint v. Richards*, 167 S.W.3d 513, 517 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("Because [the plaintiff] did not even attempt to base his intentional infliction of emotional distress claim on facts independent of his defamation claim, we hold that an intentional infliction of emotional distress claim is not available."); *Byrd v. Vick*, 409 S.W.3d 772, 782 (Tex. App.—Fort Worth 2013), *overruled on other grounds by Cartney, Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) (holding IIED claim is unavailable where the complaint alleges the same underlying conduct supports a claim for defamation); *Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 546 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (upholding summary judgment because plaintiff did not "base his intentional infliction claim on any act apart from those underlying his [defamation and malicious prosecution] claims").

[123] Complaint ¶¶ 86-88.

Plaintiff may not recover under the separate tort of intentional infliction of emotional distress.[124]

The fact that Plaintiff's defamation claims are time-barred does not alter this result.[125]

### 2. Plaintiff's Intentional Infliction of Emotional Distress Claim Must be Dismissed for the Same Reasons as His Defamation Claim

It is well-established that claims for intentional infliction of emotional distress should be

dismissed where they are premised on the same facts as other meritless tort claims.[126] Where the

gravamen of a claim is alleged defamation, the one year statute of limitations applicable to

defamation claims also applies to the other causes of action—even if that cause of action would

otherwise be subject to a longer limitations period.[127] Thus, because each of Plaintiff's

defamation claims against BenBella are time-barred and frivolous,[128] his intentional infliction of

emotional distress claim, which he pleads based on identical facts, must be also dismissed.

---

[124] *See Hoffman-La Roche*, 144 S.W.3d at 447; *Standard Fruit & Vegetable*, 985 S.W.2d at 68.

[125] *See Draker*, 271 S.W.3d at 322; *see also Conley v. Driver*, 175 S.W.3d 887 n. 4 (Tex. App.— Texarkana 2005, pet. denied) (explaining that intentional infliction of emotional distress tort cannot be used as an alternative to some other, more conventional tort which "fits the facts but might be subject to some structural impediment," such as statute of limitations or failure to prove elements of a claim).

[126] *See Sparks v. Reneau Publ'g., Inc.*, 245 F.R.D. 583, 587 (E.D. Tex. 2007) ("claim for tortious interference with contract relies squarely on determining the falsity of the articles. Accordingly, it must fail for the same reasons as the underlying libel action."); *KTRK Television*, 950 S.W.2d at 108 (holding that intentional infliction of emotional distress claim grounded entirely on defamation claim was precluded by meritless defamation claim); *Mahan v. Arctic Catering, Inc.*, 133 P.3d 655, n. 1 (Alaska 2006) (intentional infliction of emotional distress claim was moot where the claim was premised on a sexual harassment claim which was barred by the statute of limitations).

[127] *See Nationwide*, 512 F.3d at 146-47 (tortious interference claims based on alleged defamation subject to one-year limitations period, not two-year period that would otherwise govern claim); *Hamad v. Ctr. for Jewish Cmty. Studies*, 265 F. App'x. 414, 417 (5th Cir. 2008) ("[Plaintiff] cannot avoid the one-year statute of limitations applicable to defamation claims by simply alleging . . . causes of action that are subject to a two-year statute of limitations."); *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 370 (Tex. 2014) (tortious interference claim was subject to the one-year statute of limitations because it was predicated solely on the allegedly defamatory statement).

[128] *See* Section B, *supra*.

**G.      Plaintiff's Complaint Fails to Allege an Actionable Claim for Misappropriation of Name or Likeness**

BenBella is entitled to dismissal because Plaintiff fails to state an actionable claim for common law misappropriation under Texas law.[129] A misappropriation claim has three elements: "(i) that the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (ii) that the plaintiff can be identified from the publication; and (iii) that there was some advantage or benefit to the defendant."[130] A claim for misappropriation fails when the value of one's likeness is "published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity."[131] It is well-established that the "right of publicity does not preclude others from incorporating a person's name, features or biography in a literary work . . . Only the use of an individual's identity in advertising invades a plaintiff's privacy."[132]

In *Matthews*, the Fifth Circuit Court of Appeals held that the plaintiff could not recover for a misappropriation claim under Texas law because the subject matter of the book and film at issue was a matter of public concern and because the protection of "a name or likeness" under Texas law does not include one's life story.[133] Plaintiff's misappropriation of name claim similarly fails because it is clear from the Complaint that the subject matter of *The Blood of Patriots* involves his partial life story and biographical information.[134] Like the book and film at

---

[129] There is no conflict between Alaska and Texas law because the Alaska Supreme Court has "not yet recognized the tort of misappropriation" under Alaska law. *See Alaskasland.Com, LLC v. Cross*, 357 P.3d 805, 810 (Alaska 2015) (declining to express an opinion on the validity of a misappropriation claim under Alaska law and holding that plaintiff's misappropriation claim, if any, was barred by the federal Copyright Act).

[130] *Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994) (applying Texas law).

[131] *Id*.

[132] *Id*. at 439.

[133] *Id*. at 437-38 ("the term 'likeness' does not include general incidents from a person's life").

[134] *See generally*, Complaint ¶¶ 8-26.

issue in *Matthews*, many of the material facts in *The Blood of Patriots* are a matter of public record because of Plaintiff's publicized criminal trial.[135]  Furthermore, it is evident from the face of Plaintiff's Complaint that the subject matter of *The Blood of Patriots*— Plaintiff's arrest and criminal trial—is a matter of public concern.[136]

Plaintiff's misappropriation of likeness claim similarly fails as a matter of law because he does not allege that there are photos of him in *The Blood of Patriots*.[137]  The only depiction of Plaintiff in *The Blood of Patriots* is a stick figure illustration by co-author Jeanne Devon of Plaintiff on the witness stand at his criminal trial.[138]  The illustration is not identifiable as Plaintiff, and Plaintiff does not allege that it is identifiable as him.[139]  But even if the illustration was identifiable as Plaintiff, his claim for misappropriation fails because he willingly put his image in the public domain as far back as 2009 when he gave a videotaped interview to an internet political blogger.[140]

---

[135] *See* n. 90, *supra*; *Matthews*, 15 F.3d at 439 ("a name cannot be appropriated by reference to it in connection with the legitimate mention of public activities.").

[136] Complaint ¶ 22 ("The audio recording of Plaintiff repeatedly rejecting violence were hidden from the jury [in Plaintiff's criminal trial], but are now being made available to the public by Schaefer [sic] Cox supporters via YouTube and other means."); Complaint ¶ 24 (" 'The importance of this case is significant to the whole of humanity,' says Larry Pratt, President of Gun Owners of America. He points out that the prosecution conceded that Schaeffer Cox had no actual plans for violence, but convicted him anyway based on Plaintiff's belief that 'We the People' may someday have to stand down an out of control government").

[137] *See generally* Complaint; *Busch v. Basic Organics, Inc.,* No. CIVA 3:06CV2261 L, 2007 WL 603385, at *7 (N.D. Tex. Feb. 27, 2007) (Lindsay, J.) (granting 12(b)(6) motion to dismiss misappropriation claim where plaintiff failed to allege that defendant was even in possession of any photographs of plaintiff).

[138] Exh. 1 at App. 255 ("Cameras were not allowed in the federal courthouse [during Plaintiff's trial], so here are some early lifelike courtroom sketches by Jeanne Devon.").

[139] *Compare* Complaint ¶¶ 92-98 *with Matthews*, 15 F.3d at 437 (reciting elements of misappropriation claim).

[140] *See* Plaintiff's Websites, n. 21, *supra*, at https://freeschaeffer.com/gallery/.  The Media section of SCHAEFFER COX, PRISONER FOR LIBERTY contains a November 2009 interview Plaintiff gave to Kurt Feigel when Plaintiff was a delegate to the Continental Congress.  *See Matthews*, 15 F.3d at 440 ("[l]iability for misappropriation ... will not arise when the information in question is in the public domain."); *see also Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 777 (N.D. Tex. 2007) (Lindsay, J.) (citing *Matthews* and dismissing claim for misappropriation pursuant to

## IV.        PRAYER

For the reasons discussed above, Defendant BenBella Books respectfully requests that:

a.        the Court grant this motion and dismiss Plaintiff's claims against Defendant BenBella Books with prejudice;

b.        in the event that the Court determines that Alaska law applies, award Defendant BenBella full attorneys' fees, or in the alternative, a minimum of 20 percent of its attorneys' fees, pursuant to Alaska R. Civ. P. 82; and

c.        the Court award and award all such other relief to which it is justly entitled.

---

Rule 12(b)(6) because Plaintiff's appearance on a talk show prior to the alleged misappropriation put his image in the public domain)).

Dated:  February 1, 2019                    Respectfully submitted,


                                            /s/ Michael A. McCabe
                                            Michael A. McCabe
                                            Texas State Bar No. 24007628
                                            mmccabe@munckwilson.com
                                            Lauren L. Mitchell
                                            Texas State Bar No. 24071172
                                            lmitchell@munckwilson.com
                                            **MUNCK WILSON MANDALA, LLP**
                                            600 Banner Place Tower
                                            12770 Coit Road
                                            Dallas, Texas 75251
                                            Telephone:  972-628-3600
                                            Telecopier:  972-628-3616

                                            **ATTORNEYS FOR DEFENDANT
                                            BENBELLA BOOKS, INC.**


## CERTIFICATE OF SERVICE

I hereby certify on this 1st day of February, 2019, that a true and correct copy of the foregoing was served on all counsel of record via electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(e).


                                            /s/ Michael A. McCabe
                                            Michael A. McCabe