**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **FRANCIS SCHAEFFER COX,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:18-cv-03367-B** |
| | § | |
| **BENBELLA BOOKS, INC. AND** | § | |
| **WILLIAM FULTON,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO
TEX. CIV. PRAC. & REM. CODE § 27.001 *et seq.***

**TABLE OF CONTENTS**

I.    SUMMARY OF THE ARGUMENTS ....................................................................1

II.   BACKGROUND FACTS ......................................................................................2

III.  ARGUMENT ........................................................................................................3

     A.    Legal Standards ........................................................................................3

     B.    The TCPA Applies to Texas State Claims Proceeding in Federal Court ...............5

           1.    The Fifth Circuit Has Historically Assumed that the TCPA Applies to State Law Claims in Diversity Cases ....................................................5

           2.    Federal District Courts in Texas Have Explicitly Held that the TCPA Applies to State Law Claims in Diversity Cases ...........................7

     C.    The TCPA Applies to Plaintiff's Claims Against BenBella Because Those Claims Are Based on, Relate to, or are In Response to BenBella's Exercise of Its Right to Free Speech ...........................................................................9

     D.    Plaintiff's Defamation, Defamation Per Se, Defamation by Implication, and Intentional Infliction of Emotional Distress Claims Fail Because they are Time Barred ...........................................................................................11

     E.    Plaintiff Cannot Establish by Clear and Specific Evidence a *Prima Facie* Case for Each Element of His Claims ...........................................................11

           1.    The Deficiencies in Plaintiff's Defamation Claims Require the Dismissal of Those Claims and All other Claims Based on Alleged Defamation ......................................................................................11

                  a.    Plaintiff Cannot Meet His Burden to Show the Statements at Issue Are Defamatory in Nature or Materially False ...............12

                  b.    The Complained-of Statements are Opinions and Not Objectively Verifiable ...............................................................13

                  c.    Plaintiff's Claims Fail Because They are Premised on A Privileged Report of Judicial Proceedings and Matters of Public Concern ...................................................................14

                  d.    Plaintiff is a Public Figure and Cannot Recover for Defamation without Establishing that BenBella Acted with Actual Malice ...........................................................................16

                  e.    Plaintiff is Libel-Proof and Has Suffered No Damages ...............17

            2.    Plaintiff's Misappropriation Claim Must Be Dismissed for Failure to Submit "Clear and Specific" Evidence to Support Each Essential Element ........................................................................................18

IV.  PRAYER............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avila v. Larrea*,
394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied) ................................................11, 16

*Banik v. Tamez*,
No. 7:16-CV-462, 2017 WL 1228498 (S.D. Tex. Apr. 4, 2017)............................................8

*Basic Capital Mgmt., Inc. v. Dow Jones & Co.*,
96 S.W.3d 475 (Tex. App.—Austin 2002, no pet.) ..............................................................13

*Bentley v. Bunton*,
94 S.W.3d 561 (Tex. 2002).................................................................................................13

*Blanche v. First Nationwide Mortg. Corp.*,
74 S.W.3d 444 (Tex. App.—Dallas 2002, no pet.)...............................................................12

*Block v. Tanenhaus*,
867 F.3d 585 (5th Cir. 2017) ..............................................................................................6

*Camp v. Patterson*,
No. 03-16-00733-CV, 2017 WL 3378904 (Tex. App.—Austin Aug. 3, 2017,
no pet.) ................................................................................................................................17

*Casso v. Brand*,
776 S.W.2d at 557................................................................................................................16

*Charalambopoulos v. Grammer*,
No. 3:14-CV-2424-D, 2015 WL 390664 (N.D. Tex. Jan. 29, 2015) (Fitzwater,
J.)......................................................................................................................................8, 9

*Combined Law Enforcement Ass'n of Texas v. Sheffield*,
2014 WL 411672 (Tex. App. - Austin, January 31, 2014, no pet. h.) ...................................16

*Cox Broadcasting Corp. v. Cohn*,
420 U.S. 469 (1975).............................................................................................................10

*Crites v. Mullins*,
697 S.W.2d 715 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.)....................................15

*Cuba v. Pylant*,
814 F.3d 701 (5th Cir. 2016) .....................................................................................4, 5, 6, 7

*Culbertson v. Lykos*,
790 F.3d 608 (5th Cir. 2015) ......................................................................................5, 6, 7

*Curtis Publishing Company v. Butts*,
    388 U.S. 130 (1967)...................................................................................16

*Deaver v. Desai*,
    483 S.W.3d 668 (Tex. App.—Houston [14th Dist.] 2015, no pet.)........................10

*Diamond Consortium, Inc. v. Hammervold*,
    733 Fed. Appx. 151 (5th Cir. 2018)...........................................................5, 6, 7

*Double Diamond, Inc. v. Van Tyne*,
    109 S.W.3d 848 (Tex. App.—Dallas 2003, no pet.)............................................12

*Erie R.R. v. Tompkins*,
    304 U.S. 64 (1938)..................................................................................5, 7

*Fawcett v. Grosu*,
    498 S.W.3d 650 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ...............17

*Finklea v. Jacksonville Daily Progress*,
    742 S.W.2d 512 (Tex. App.—Tyler 1987, writ dism'd w.o.j.)............................18

*Fitzmaurice v. Jones*,
    417 S.W.3d 627 (Tex. App.—Houston [14th Dist.] 2013, no pet.)......................15

*Gertz v. Welch*,
    418 U.S. 323 (1974)...................................................................................16

*Goss v. Houston Community Newspapers*,
    252 S.W.3d 652 (Tex. App.—Houston [14th Dist.] 2008, no pet.)......................15

*Granada Biosciences, Inc. v. Forbes, Inc.*,
    49 S.W.3d 610 (Tex. App.—Houston [14th Dist.] 2001) *rev'd on other
    grounds*, 124 S.W.3d 167 (Tex. 2003) .........................................................15

*Guardian v. Robert Muller Family P'ship Ltd.*,
    No. 04–13–00441–CV, 2014 WL 309776 (Tex. App.—San Antonio, January
    29, 2014, no pet. h.) ................................................................................4

*Hanna v. Plumer*,
    380 U.S. 460 (1965)....................................................................................5

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989)...................................................................................16

*Harvest House Publishers v. Local Church*,
    190 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2006, pet. denied), cert.
    denied, 127 S.Ct. 2987 (2007) ...................................................................15

*Henry v. Lake Charles Am. Press*,
566 F.3d 164 (5th Cir. 2009) ........................................................5, 6, 8

*Herald-Post Publishing Co., Inc. v. Hill*,
891 S.W.2d 638 (Tex. 1994)................................................................15

*Howell v. Hecht*,
821 S.W.2d 627 (Tex. App.—Dallas 1991, writ denied) .......................15

*Ins. Safety Consultants, LLC v. Nugent*,
No. 3:15-CV-2183-B, 2016 WL 2958929 (N.D. Tex. May 23, 2016) (Boyle,
J.)..........................................................................................................8

*James v. Brown*,
637 S.W.2d 914 (Tex. 1982).................................................................14

*Johnson v. Phillips*,
526 S.W.3d 529 (Tex. App.—Houston [1st Dist.] 2017, pet. filed), *reh'g
overruled* (Sept. 7, 2017) .............................................................13, 14

*Kaufman v. Islamic Soc'y of Arlington*,
291 S.W.3d 130 (Tex. App.—Fort Worth 2009, pet. denied) ...............15

*KBMT Operating Co. v. Toledo*,
492 S.W.3d 710 (Tex. 2016)................................................................12

*Klocke v. University of Texas at Arlington*,
No. 4:17-CV-285-A, 2017 WL 6767393 (N.D. Tex. July 25, 2017) (McBryde,
J.), *appeal docketed*, No. 17-11320 (5th. Cir. Nov. 8, 2017).....................8

*KTRK Television v. Felder*,
950 S.W.2d 100 (Tex. App.—Houston [14th Dist.] 1997, no writ) .......12

*KTRK v. Robinson*,
409 S.W.3d 682 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)....11

*La'Tiejira v. Facebook, Inc.*,
No. H-16-2574, 2017 WL 3426039 (S.D. Tex. Aug. 7, 2017)................8

*Langston v. Eagle Printing Co.*,
797 S.W.2d 66 (Tex. App.—Waco 1990, no writ) ...............................15

*Liles v. Finstad*,
No. 01-94-00258-CV, 1995 WL 457260 (Tex. App.—Houston [1st Dist.]
1995, writ denied) ...............................................................................15

*In re Lipsky*,
460 S.W.3d 579 (Tex. 2015)................................................2, 3, 4, 17

iv

*Lozovyy v. Kurtz*,
    813 F.3d 576 (5th Cir. 2015) ........................................................................6

*Main v. Royall*,
    348 S.W.3d 381 (Tex. App.—Dallas 2011, no pet.)...............................................15

*Maxwell v. Henry*,
    815 F.Supp. 213 (S.D. Tex. 1993) ................................................................15

*McIlvain v. Jacobs*,
    794 S.W.2d 14 (Tex. 1990)........................................................................12

*Morris v. Blanchette*,
    181 S.W.3d 422 (Tex. App.—Waco 2005, no pet.)...............................................13

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
    745 F.3d 742 (5th Cir. 2014) ........................................................................6

*Neely v. Wilson*,
    418 S.W.3d 52 (Tex. 2013)........................................................................13

*Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*,
    416 S.W.3d 71 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)................................12, 14

*NYT v. Sullivan*,
    376 U.S. 254 (1964)...............................................................................16

*Rudkin v. Roger Beasley Imports, Inc.*,
    A–17–CV–849–LY, 2017 WL 6622561 (W.D. Tex. Dec. 28, 2017)....................................8

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
    559 U.S. 393 (2010)................................................................................5

*Traweek v. Radio Brady, Inc.*,
    441 S.W.2d 240 (Tex. App.—Austin 1969, writ ref'd n.r.e.).....................................15

*Turner v. KTRK Television, Inc.*,
    38 S.W.3d 103 (Tex. 2000).....................................................................13, 14

*Vu v. Vu*,
    No. CV H-16-0366, 2016 WL 3181168 (S.D. Tex. June 3, 2016) ....................................10

*Walker v. Beaumont Indep. Sch. Dist.*,
    No. 1:15-cv-0379, Doc. No. 178 (E.D. Tex. Feb. 11, 2016), *appeal filed* No.
    17-40752 (5th Cir. July 16, 2015)...................................................................8

*Warner Bros. Entm't, Inc. v. Jones*,
    538 S.W.3d 781 (Tex. App.—Austin 2017, pet. filed)............................................9

*Watson v. Hardman*,
   05-15-01355-CV, 2016 WL 3626091 (Tex. App.—Dallas July 6, 2016, no
   pet.) ............................................................................................................................10

*WFAA v. McLemore*,
   978 S.W.2d 568 (Tex. 1998) ............................................................................10, 11

*William Noble Rare Jewels, L.P. v. Sky Global L.L.C.*,
   No. 3:18-CV-01566-N, 2019 WL 935954 (N.D. Tex. February 25, 2019)
   (Godbey, J) ...................................................................................................................8

*Williams v. Cordillera Comm., Inc.*,
   No. 2:13-CV-124, 2014 WL 2611746 (S.D. Tex. June 11, 2014) ..................................7, 8, 10

**Statutes**

28 U.S.C. § 2072 .........................................................................................................5

Tex. Civ. Prac. & Rem. Code § 27.001 ...........................................................1, 3, 9, 10

Tex. Civ. Prac. & Rem. Code § 27.002 ...................................................................3

Tex. Civ. Prac. & Rem. Code § 27.003(a) ..............................................................9

Tex. Civ. Prac. & Rem. Code §27.005 ..............................................................*passim*

Tex. Civ. Prac. & Rem. Code § 27.006(a) ...........................................................3, 4

Tex. Civ. Prac. & Rem. Code §73.002 ...................................................................15

Texas Citizens' Participation Act .....................................................................*passim*

**Other Authorities**

First Amendment ...................................................................................1, 7, 14, 15

*The Blood of Patriots*—Second Amendment ....................................................10, 18

FED. R. CIV. P. 5.........................................................................................................20

FED. R. CIV. P. 12(b)(6).......................................................................................2, 3, 4, 8

FED. R. CIV. P. 56 .................................................................................................5, 8

Texas Constitution Article I, Section 8...................................................................15

United States Constitution First and Fourteenth Amendments...................................15

COMES NOW, Defendant BenBella Books, Inc. ("BenBella") and files its Motion to Dismiss Pursuant to Texas Civil Practices and Remedies Code § 27.001, *et seq.* ("the Motion"). In support, BenBella would respectfully show this Court as follows:

## I.    SUMMARY OF THE ARGUMENTS

As demonstrated in Defendant's Rule 12(b)(6) Motion to Dismiss [Doc. 10] ("BenBella's 12(b)(6) Motion"), Plaintiff's claims for defamation, intentional inflection of emotional distress, and misappropriation of name, image, and likeness arise from Defendant's book, *The Blood of Patriots: How I Took Down an Anti-Government Militia with Beer, Bounty Hunting, and Badassery*,[1] which accurately recounts how Plaintiff was arrested, tried, and convicted for (among other criminal charges) conspiring to murder federal agents, including law enforcement personnel, and state judges.  Plaintiff's claims are subject to dismissal under the Texas Citizens' Participation Act ("TCPA") because they implicate BenBella's exercise of First Amendment rights.[2]

There can be no question that BenBella was exercising its First Amendment rights in publishing *The Blood of Patriots*, which concerned Plaintiff's arrest, trial, and conviction.  Thus, any claim that arises from *The Blood of Patriots* is subject to early dismissal under the TCPA, which shifts the burden to Plaintiff to submit "clear and specific" evidence to support each essential element of his claim.[3]   Plaintiff cannot meet this burden in connection with his defamation claims against BenBella because: (1) the claims are time-barred by the applicable statute of limitations;  (2) the statements in *The Blood of Patriots* are privileged under Texas law

---

[1] *See* Doc. 10, Exh. 1, WILLIAM FULTON & JEANNE DEVON, THE BLOOD OF PATRIOTS: HOW I TOOK DOWN AN ANTI-GOVERNMENT MILITIA WITH BEER, BOUNTY HUNTING, AND BADASSERY (2017) (hereinafter "*The Blood of Patriots*").

[2] *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1).

[3] *See id.* at § 27.005(c).

as a fair and true report of criminal proceedings; (3) Plaintiff cannot demonstrate that BenBella published *The Blood of Patriots* with malice; (4) Plaintiff's damages, if any, were caused by his own criminal conduct, which occurred prior to the publication by BenBella; (5) Plaintiff is estopped from bringing claims that would undermine his criminal convictions; and (6) Plaintiff's criminal history makes him libel-proof.

Unlike Rule 12(b)(6), under the TCPA, Plaintiff cannot rely solely on his pleadings. He must submit "clear and specific" evidence to support *each* essential element of his claims.[4] Because Plaintiff cannot satisfy this burden as to multiple elements of his claims, his claims must be dismissed. Moreover, even assuming, *arguendo*, the TCPA is inapplicable to Plaintiff's Complaint, his claims fail under Federal Rule of Civil Procedure 12(b)(6). BenBella's 12(b)(6) Motion provides a separate and independent basis for dismissing the Complaint against BenBella in its entirety.

## II. BACKGROUND FACTS

This motion is based on the same documents and factual background as BenBella's 12(b)(6) Motion. As discussed in that motion, Plaintiff alleges defamation, defamation by implication, defamation per se, intentional infliction of emotional distress, and misappropriation of name or likeness against Defendants William Fulton ("Fulton")—an undercover informant in the FBI investigation which led to Plaintiff's arrest and multiple criminal convictions[5] who later authored *The Blood of Patriots* based on his personal knowledge of those events—and BenBella,

---

[4] Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015).

[5] After a trial by a jury of his peers, Plaintiff was found guilty and convicted of: (1) conspiracy to possess unregistered silencers and destructive devices; (2) possession of unregistered silencers and destructive devices; (3) possession of an unregistered silencer; (3) possession of an unregistered machine gun; (4) illegal possession of a machine gun; (5) making of a silencer; (6) carrying firearms during a crime of violence; (7) possession of unregistered destructive devices; and (8) conspiracy to murder an Officer of the United States; (9) solicitation to murder an Officer of the United States. *See* Doc. 10, Exh. 4, Verdict Form, Doc. 432, Case No. 3:11-CR-00022-RJD (D. Alaska, Jun. 8, 2012), App. at 316-319; Doc. 10, Exh. 5, Judgment in a Criminal Case, Doc. 561, Case No. 3:11-CR-00022-RJD (D. Alaska, Jan. 8, 2013) (Bryan, J.), App. at 321-22.

the publisher of *The Blood of Patriots*. A complete copy of *The Blood of Patriots* is attached to BenBella's 12(b)(6) Motion and filed under seal.[6] In addition, the Verdict Form and Judgment in a Criminal Case, which establishes that *The Blood of Patriots* is substantially true and privileged, are attached to BenBella's 12(b)(6) Motion.[7] As BenBella noted in its Rule 12(b)(6) motion, this evidence is properly before the Court on a Rule 12(b)(6) motion.[8] It may also be considered on a motion to dismiss under the TCPA.[9]

### III.   ARGUMENT

#### A.   Legal Standards

In addition to Rule 12(b)(6), the TCPA provides an independent basis for the dismissal of Plaintiff's claims against BenBella. The TCPA is an anti-SLAPP (strategic lawsuits against public participation) statute that is designed to "encourage and safeguard the constitutional rights of persons to . . . speak freely,"[10] by protecting them "from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern."[11] "Matters of public concern" includes, *inter alia*, issues related to "health or safety," "community well-being," "the government," or "a public official or public figure."[12] The TCPA also protects the right to petition, which includes communications pertaining to judicial proceedings.[13]

---

[6] *See* Doc. 13, Order Granting Motion to File Under Seal.

[7] *See* Doc. 10, Exh. 4; Doc. 10, Exh. 5.

[8] *See* Doc. 10 at n. 17.

[9] *See* Tex. Civ. Prac. & Rem. Code § 27.006(a) (court shall consider pleadings and evidence); *In re Lipsky*, 460 S.W.3d 579, 590-91 (Tex. 2015) (court must consider pleadings and evidence in analyzing a TCPA motion).

[10] *See* Tex. Civ. Prac. & Rem. Code § 27.002.

[11] *Lipsky*, 460 S.W.3d at 586 (Tex. 2015) (internal citation omitted).

[12] S*ee* Tex. Civ. Prac. & Rem. Code § 27.001(7).

[13] *See id.* at § 27.001(4)(A)(i).

The TCPA sets out a two-step inquiry when a party moves to dismiss.[14] First, the defendant must show that a plaintiff's claim "is based on, relating to, or in response to" the movant's "exercise of the right of free speech; right to petition; or right of association."[15] The court can and should consider the Complaint as evidence that the TCPA applies.[16]

If the defendant makes this showing, the burden shifts to the plaintiff to "establish[ ] by clear and specific evidence a *prima facie* case for each essential element of the claim in question."[17] Plaintiff may do this thorough either direct or circumstantial evidence.[18] Even if the plaintiff meets this burden, the court *must* still dismiss the claim if the defendant establishes by a preponderance of the evidence each essential element of a valid defense.[19] Thus, unlike a Rule 12(b)(6) motion, dismissal under the TCPA cannot be avoided merely by pleading facts. Plaintiff must submit "clear and specific" *evidence* to support his claims, and movant BenBella may submit its own evidence.

Even if the plaintiff can meet this high burden, the claim nonetheless must be dismissed if the defendant establishes each essential element of a valid defense by a preponderance of the evidence.[20] Moreover, a dismissal under the TCPA comes with a mandatory attorneys' fees award plus possible sanctions.[21]

---

[14] *Cuba v. Pylant*, 814 F.3d 701, 711 (5th Cir. 2016).

[15] Tex. Civ. Prac. & Rem. Code § 27.005(b).

[16] S*ee* Tex. Civ. Prac. & Rem. Code § 27.006(a); *see also Guardian v. Robert Muller Family P'ship Ltd.*, No. 04–13–00441–CV, 2014 WL 309776, *4 (Tex. App.—San Antonio, January 29, 2014, no pet.) (considering plaintiff's petition as evidence to determine statute applies and reversing denial of motion), *disapproved of on other grounds by Lipsky*, 460 S.W.3d 579.

[17] Tex. Civ. Prac. & Rem. Code § 27.005(c).

[18] *Lipsky*, 460 S.W.3d 579.

[19] Tex. Civ. Prac. & Rem. Code § 27.005(d).

[20] *Id.*

[21] *Id.* at § (a).

## B.      The TCPA Applies to Texas State Claims Proceeding in Federal Court

Under *Erie Railroad Co. v. Tompkins* and its progeny, federal district courts sitting in diversity must apply the substantive law of the state in which the district court sits.[22]  In determining whether the state law is substantive or procedural, courts must analyze under *Erie* whether applying state law would discourage forum-shopping and avoid the "inequitable administration of the laws."[23]  When a valid Federal Rule of Civil Procedure governs an issue, the application of state law is supplanted.[24]  The test for federal rule displacement has two parts: (1) whether a federal rule "answers the question in dispute";[25] and (2) whether the federal rule is valid.[26] *Erie* only governs when a federal rule does not apply or is invalid.[27]  The federal rule displacement question as it pertains to a TCPA motion in federal court is "whether Rules 12(b)(6) and 56 "attempt[ ] to answer the same question"[28] as the TCPA.

### 1.      The Fifth Circuit Has Historically Assumed that the TCPA Applies to State Law Claims in Diversity Cases

The Fifth Circuit has not decided whether the TCPA is substantive or procedural, but it has historically "assume[d]—without deciding—[that the TCPA] controls as state substantive law in [ ] diversity suits."[29]  In 2009, the Fifth Circuit first addressed the issue of whether anti-

---

[22] *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965); *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

[23] *See Hanna*, 380 U.S. at 468.

[24] *See id.* at 473

[25] *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 398 (2010).

[26] *See id.* Valid means both valid as an exercise of the statutory authorization to create federal rules under the Rules Enabling Act and valid as an exercise of Congress's rulemaking power.  In the Rules Enabling Act, Congress authorized the Supreme Court to promulgate rules of procedure subject to its review, 28 U.S.C. § 2072(a), but with the limitation that those rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C § 2072(b).

[27] *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 170 (5th Cir. 2009).

[28] *See Shady Grove*, 559 U.S. at 399.

[29] *Cuba*, 814 F.3d at 706; *see also Diamond Consortium, Inc. v. Hammervold*, 733 Fed. Appx. 151, 154 n.3 (5th Cir. 2018) (exercising jurisdiction over interlocutory appeal of state law conspiracy claim and assuming the TCPA applies in federal court); *Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2015) (interlocutory appeal of denial of TCPA motion on state law retaliation claim by U.S. District Court for the Southern District of Texas, exercising

SLAPP statutes may be applied in federal court in *Henry v. Lake Charles American Press*, holding Louisiana's anti-SLAPP statute, Article 971, did apply.[30]  In *Cuba v. Pylant*, the Fifth Circuit assumed the TCPA applied in federal court and accepted jurisdiction of an interlocutory appeal of the denial of a TCPA motion to dismiss Texas state law defamation claims by the U.S. District Court for the Northern District of Texas, sitting in diversity.[31]    The Fifth Circuit revisited the issue in *Block v. Tanenhaus*, finding: "[t]he applicability of state anti-SLAPP statutes in federal court is an important and unresolved issue in this circuit."[32]  In *Block*, the plaintiff argued that Louisiana's anti-SLAPP statute is not applicable in federal court because it is procedural and because, even if it is substantive, it is in direct collision with the Federal Rules of Civil Procedure.[33]  The court observed that the Fifth Circuit has repeatedly applied state anti-SLAPP statutes in cases of diversity jurisdiction.[34]  *Block* went on to apply Louisiana's anti-SLAPP statute to the defamation claim asserted by the plaintiff.   As recently as May 2018, the Fifth Circuit continued to opine that the application of the TCPA in federal court was an unresolved issue but chose to "follow previous panels in assuming without deciding that Texas's anti-SLAPP statute applies in federal court."[35]

---

supplemental jurisdiction) ("We have not specifically held that the TCPA applies in federal court; at most we have assumed without deciding its applicability.") (citing *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 753 (5th Cir. 2014); *Lozovyy v. Kurtz*, 813 F.3d 576, 582-83 (5th Cir. 2015) (in a diversity action, applying Louisiana's anti-SLAPP statute to state law defamation claims) (citing *Henry*, 566 F.3d at 170)).

[30] *Henry*, 566 F.3d  at 170.

[31] *Cuba*, 814 F.3d at 706 ("As a general matter, this court has jurisdiction over an interlocutory appeal from an order denying a TCPA motion to dismiss.") (citing *NCDR*, 745 F.3d at 748); *see also Culbertson*, 790 F.3d at 631 (assuming the statute applied in federal court and accepted jurisdiction of an interlocutory appeal of the denial of a TCPA motion by the U.S. District Court for the Southern District of Texas).

[32] *Block v. Tanenhaus*, 867 F.3d 585, n.2 (5th Cir. 2017).

[33] *Id*.

[34] *Id*. at 589.

[35] *Diamond Consortium,* 733 F. App'x at 154 n.3 (citing *Culbertson*, 790 F.3d at 631).

In sum, the Fifth Circuit has, in multiple opinions since 2009[36] and most recently, in May 2018,[37] assumed that anti-SLAPP statutes generally, and the TCPA specifically, applies to state law claims proceeding in federal court at every opportunity, without stating that it does.[38]

### 2. Federal District Courts in Texas Have Explicitly Held that the TCPA Applies to State Law Claims in Diversity Cases

Other federal courts in the Fifth Circuit have directly addressed the issue of whether the TCPA applies in a federal court sitting in diversity, holding that it does and basing their analysis on precedent in which the Fifth Circuit assumed application of state anti-SLAPP statutes in diversity cases. *Williams v. Cordillera Communications, Inc.*, a diversity action before the U.S. District Court for the Southern District of Texas, is illustrative. In *Williams*, a high school teacher, who had repeatedly been accused of improper behavior, filed claims of defamation and defamation *per se* in response to a local television station's investigative series about him.[39] The defendant filed a motion under the TCPA, and the plaintiff responded arguing that the TCPA does not apply in federal court.[40] The court conducted an *Erie* analysis,[41] determining that, although there were procedural components to the TCPA, "these procedural features are designed to prevent substantive consequences—the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit under state

---

[36] *See supra*, n. 29 (collecting cases).

[37] See *Diamond Consortium*, 733 Fed. Appx. at 154 n.3.

[38] *Id.* (assuming the TCPA applies in federal court and the court has jurisdiction over an interlocutory TCPA appeal); *Cuba*, 814 F.3d at 706 ("As a general matter, this court has jurisdiction over an interlocutory appeal from an order denying a TCPA motion to dismiss."); *Culbertson*, 790 F.3d at 631 (assuming the TCPA applies in federal court and accepting jurisdiction of an interlocutory appeal of the denial of a TCPA motion by the U.S. District Court for the Southern District of Texas).

[39] *Williams v. Cordillera Comm., Inc.*, No. 2:13-CV-124, 2014 WL 2611746 at *2 (S.D. Tex. June 11, 2014).

[40] *See id*. at *1.

[41] *See id*.

law."[42]   The court then looked to the Fifth Circuit's *Henry* decision, in which Louisiana's anti-SLAPP law was applied, noting there are "no material differences between the Louisiana and Texas anti-SLAPP statutes" for determining their applicability in a federal court case presiding over state law claims.[43]   The Eastern and Southern Districts of Texas have followed suit, explicitly affirming that the TCPA applies to state law claims in a federal court exercising diversity or supplemental jurisdiction.[44]

Similarly, the Northern District of Texas has applied the TCPA in diversity cases.[45]   In *Klocke v. University of Texas at Arlington*, Judge McBryde rejected the plaintiff's argument that the substance of the TCPA could not apply to his state law claims, and then dismissed the plaintiff's complaint pursuant to the TCPA.[46]   As another example, in *Charalambopoulos v.*

---

[42] *Id.* ("The Court thus enforces the TCPA as it applies to this case.").

[43] *Id.* at *2 (citing *Henry*, 566 F.3d at 164).

[44] *Walker v. Beaumont Indep. Sch. Dist.*, No. 1:15-cv-0379, Doc. No. 178, at 4 (E.D. Tex. Feb. 11, 2016) (finding that "the TCPA is enforceable in a federal court sitting in diversity jurisdiction."), *appeal filed* No. 17-40752 (5th Cir. July 16, 2015); *La'Tiejira v. Facebook, Inc.*, No. H-16-2574, 2017 WL 3426039, at *1 (S.D. Tex. Aug. 7, 2017) ("Although the TCPA is a state law, it applies to Texas law claims in a federal court sitting in diversity."); *Banik v. Tamez*, No. 7:16-CV-462, 2017 WL 1228498, at *2 (S.D. Tex. Apr. 4, 2017)(TCPA does not conflict with Federal Rules of Civil Procedure 12 and 56, because TCPA "provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis [than Rules 12 and 56]: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the special rules [Texas] has created to protect such petitioning activity against lawsuits."); *but see Rudkin v. Roger Beasley Imports, Inc.*, A–17–CV–849–LY, 2017 WL 6622561 at *2 (W.D. Tex. Dec. 28, 2017) (holding TCPA is procedural and conflicts with the federal rules of civil procedure in a case involving supplemental jurisdiction over state law claims).

[45] *Klocke v. Univ. of Tex. at Arlington*, No. 4:17-CV-285-A, 2017 WL 6767393, at *1, n.2 (N.D. Tex. July 25, 2017) (McBryde, J.), *appeal docketed*, No. 17-11320 (5th. Cir. Nov. 8, 2017) (dismissing defamation claims pursuant to the TCPA in a diversity action); *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2015 WL 390664, at *28 (N.D. Tex. Jan. 29, 2015) (Fitzwater, J.); *but see William Noble Rare Jewels, L.P. v. Sky Global L.L.C.*, No. 3:18-CV-01566-N, 2019 WL 935954, at *2 (N.D. Tex. February 25, 2019) (Godbey, J) (denying TCPA motion on breach of contract and tortious interference claims in diversity case on the basis that "even assuming that the TCPA is substantive in nature, the law clearly conflicts with Rules 12(b)(6) and 56(a).")

[46] *Compare Klocke*, 2017 WL 6767393, at *1, n.2 *with Ins. Safety Consultants, LLC v. Nugent*, No. 3:15-CV-2183-B, 2016 WL 2958929, at *5 (N.D. Tex. May 23, 2016) (Boyle, J.) (in a case of federal question jurisdiction, holding that the TCPA did not apply to the *federal* claims before the court because it conflicted with Federal Rules of Civil Procedure 12 and 56).

*Grammer*, Judge Fitzwater granted defendant's TCPA motion as to several of the plaintiff's claims in a defamation suit arising from allegations of domestic violence.[47]

## C.     The TCPA Applies to Plaintiff's Claims Against BenBella Because Those Claims Are Based on, Relate to, or are In Response to BenBella's Exercise of Its Right to Free Speech

As noted in BenBella's Rule 12(b)(6) Motion, Plaintiff's claims against BenBella are based solely on the publication of *The Blood of Patriots*, which accurately recounts how Plaintiff was arrested, tried, and convicted for (among other criminal charges) conspiring to murder federal agents, including law enforcement personnel, and state judges. Accordingly, Plaintiff's claims clearly "relate to" BenBella's "exercise of the right of free speech" within the meaning of the TCPA.[48]  In light of the fact that Plaintiff pleads defamation as a component of his intentional inflection of emotional distress claim, and his misappropriation claim is also based on the publication of *The Blood of Patriots*, those claims also "relate to" BenBella's "exercise of free speech."[49] Thus, all of Plaintiff's claims are subject to the TCPA.

Under the TCPA, the "[e]xercise of the right of free speech" is statutorily defined as "a communication made in connection with a matter of public concern."[50]  "Communication" is defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."[51] "Matters of public concern" include issues relating to: "environmental, economic or community well-being"; "the government"; "a

---

[47] *See Charalambopoulos*, 2015 WL 390664, at *28.

[48] Tex. Civ. Prac. & Rem. Code § 27.003(a).

[49]  *Id*. at §§ 27.011(b) (TCPA "shall be construed liberally to effectuate its purpose and intent fully."), 27.001(6)("legal action" includes causes of action), 27.003(a) (statute may be used to dismiss individual causes of action); *see also Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d 781, 814 (Tex. App.—Austin 2017, pet. filed) (TCPA dismissal of intentional inflection claim required "regardless of the success or failure of alternative claim" because "the facts that [he] bases this claim on are the same facts that he bases his defamation claim on").

[50] Tex. Civ. Prac. & Rem. Code § 27.001(3).

[51] *Id*. at § 27.001(1) (emphasis added).

9

public official or public figure"; or "a good, product, or service in the marketplace."[52] Publications involving criminal accusations such as the account of Plaintiff's arrest, trial, and conviction in *The Blood of Patriots*, are matters of public concern and thus, are protected expressions pursuant to the TCPA.[53]   Moreover, the other themes in *The Blood of Patriots*— Second Amendment rights,[54] citizen militias,[55] the sovereign citizen movement,[56] and Republican Party politics in Alaska[57]—are issues of public concern because they relate to government.[58]   Even assuming, *arguendo*, that the Court finds the absence of a public concern, the TCPA nevertheless applies because Plaintiff is a public figure or limited-purpose public figure, as argued in BenBella's 12(b)(6) Motion.[59]

---

[52] *Id*. at § 27.001(7) (A) – (E); *see also id*. at § 27.011(b) (instructing that these identified matters of public concern be "construed liberally.").

[53] *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions, however, are without question events of legitimate concern to the public"); *Vu v. Vu*, No. CV H-16-0366, 2016 WL 3181168, at *4 (S.D. Tex. June 3, 2016) (dismissing defamation claims against a newspaper defendant based on an article regarding the death of a local teenager and subsequent arrest of the suspected murderer pursuant to the TCPA because the article "relate[d] to the issue of public safety, which is a matter of public concern."); *Williams*, 2014 WL 2611746, at *1-2  (in a case of diversity jurisdiction, dismissing pursuant to the TCPA defamation claims against a broadcaster and publisher based on a report of allegations of criminal acts of a sexual nature by a teacher because the teacher's criminal and sexual acts were a matter of public concern); *Watson v. Hardman*, 05-15-01355-CV, 2016 WL 3626091, at *5 (Tex. App.—Dallas July 6, 2016, no pet.) (holding that the TCPA applied to allegations that an individual stole money from an estate, which related to community well-being); *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.— Houston [14th Dist.] 2015, no pet.) (holding that the TCPA applied to accusations of identity theft, which related to economic and community well-being).

[54] *See, e.g.,* Doc. 10 at App. 42, 91, 142, 254.

[55] *See, e.g.,* Doc. 10 at App. 66, 67, 98, 105, 118, 147, 151, 158, 159, 160, 165, 186, 234, 235.

[56] *See, e.g.,* Doc. 10 at App. 138, 146, 148, 198, 213, 246.

[57] *See, e.g.,* Doc. 10 at App. 75, 76, 78, 81, 82, 84, 89, 101, 102, 179, 186.

[58] *Williams,* 2014 WL 2611746, at *4 (statements relating to teacher licensing were protected under the TCPA as a matter of public concern because they relate to government).

[59] *See* Doc. 10 at 15-16; *see also WFAA v. McLemore*, 978 S.W.2d 568, 571-573 (Tex. 1998); (a plaintiff can become a public figure by "choosing to engage in activities that necessarily involved increased public exposure and media scrutiny.").

**D.** **Plaintiff's Defamation, Defamation Per Se, Defamation by Implication, and Intentional Infliction of Emotional Distress Claims Fail Because they are Time Barred**

As noted in BenBella's Rule 12(b)(6) motion, Plaintiff's defamation, defamation per se, and defamation by implication claims are based entirely on the September 19, 2017 publication of *The Blood of Patriots*.  These claims fail because they are time-barred under Texas's one-year statute of limitations.[60] Even if they had been timely filed, Plaintiff's defamation claims fail because the Complained of Statements are substantially true and privileged.[61]  For the same reasons, Plaintiff cannot rely on alleged the defamation by BenBella to support his intentional inflection of emotional distress claim, which is based on his defamation claims.[62]

**E.** **Plaintiff Cannot Establish by Clear and Specific Evidence a *Prima Facie* Case for Each Element of His Claims**

**1.** **The Deficiencies in Plaintiff's Defamation Claims Require the Dismissal of Those Claims and All other Claims Based on Alleged Defamation**

Because BenBella has shown that Plaintiff's claim is subject to the TCPA, the burden shifts to Plaintiff to establish "by clear and specific evidence a *prima facie* case for each essential element" of his claim.[63] The elements Plaintiff must provide clear and specific evidence of for his defamation claim are: (1) the statements made by BenBella are materially false statements of fact; (2) of and concerning the Plaintiff; (3) published with actual malice; (4) resulting in damages; and (5) no privileges apply.[64]  Plaintiff cannot meet this burden because the Complained of Statements are true or substantially true,[65] privileged, made without actual

---

[60] *See* Doc. 10 at 10-11.

[61] *See id.*

[62] *See* Doc. 10 at 21-22.

[63] Tex. Civ. Prac. & Rem. Code § 27.005(c).

[64] *See McLemore*, 978 S.W.2d at 571; *KTRK v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Avila v. Larrea*, 394 S.W.3d 646, 657 (Tex. App.—Dallas 2012, pet. denied).

[65] *See* Exhibit 2 for chart summarizing the truth of the Complained of Statements, as supported by evidence.

malice, and no damages resulted from the broadcasts, as opposed to Plaintiff's underlying, criminal behavior.  Although here, there are several essential elements of his claim for which Plaintiff cannot provide clear and specific evidence, even if only one element cannot be proven, the Court must grant BenBella's Motion.

> *a.*      ***Plaintiff Cannot Meet His Burden to Show the Statements at Issue Are Defamatory in Nature or Materially False***

The plaintiff bears the burden of proving falsity when the alleged defamatory statements were made by a media defendant over a matter of public concern.[66]  A statement is defamatory if it tends to injure the subject's reputation, to expose him to public hatred, contempt, ridicule, or financial injury, or to impeach his honesty, integrity, or virtue.[67]  A statement may be false, abusive, unpleasant, or objectionable without injuring a person's reputation such that it is defamatory.[68]

Furthermore, to defeat a TCPA motion, Plaintiff's burden of "a showing of falsity require[s] more than minor inaccuracies in the alleged defamatory statements."[69]  A plaintiff must prove that the statements were *substantially* or *materially* false—meaning the alleged defamatory statement had to have been more damaging to the plaintiff's reputation, in the mind of the average reader, than a truthful statement would have been.[70]  In other words, if the truth about the person would injure their reputation just as much as the allegedly defamatory

---

[66] *See, e.g., KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 713–14 (Tex. 2016); *McIlvain v. Jacobs*, 794 S.W.2d 14 (Tex. 1990) (in lawsuits against media defendants, the plaintiff's burden of proving falsity is imposed by "constitutional considerations of free speech and free press.").

[67] *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 456 (Tex. App.—Dallas 2002, no pet.).

[68] *See Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.).

[69] *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 83 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (reports of investigations and allegations of abuse in a nursing home were substantially true, despite the media defendant's "immoderate word choice").

[70] *McIlvain v. Jacobs*, 794 S.W.2d at 16; *KTRK Television v. Felder*, 950 S.W.2d 100, 105-106 (Tex. App.—Houston [14th Dist.] 1997, no writ).

statement, then the statement is not defamatory.[71]  A publication "with specific statements that

err in the details *but that correctly convey the gist of a story* is substantially true."[72]  All of the

Complained of Statements are true or substantially true.  Complained of Statements 1, 2, 3, 4, 13,

and 15 are not defamatory because in the eyes of a reasonable person reading *The Blood of*

*Patriots*, they are less injurious to Plaintiff's reputation than his convictions for multiple counts

of illegal possession of weapons and conspiracy to murder an Officer of the United States.[73]

### b.    *The Complained-of Statements are Opinions and Not Objectively Verifiable*

Some of the Complained of Statements are not objectively verifiable, and thus not

capable of a defamatory meaning.  Libel must be based on false statements of fact which are

"objectively verifiable."[74]  Texas law "focuses the analysis on the statement's verifiability and

the entire context in which it was made."[75]  Like the test for defamatory meaning, a verifiability

analysis under Texas law uses the reasonable person standard.[76]

*Johnson v. Phillips*, in which an attorney was sued for libel based on a book he wrote

about a lawsuit he had tried,[77] is an instructive application of the verifiability standard.  The book

at issue in *Johnson* recounted allegations made in the lawsuit, which family members involved in

the litigation claimed were defamatory.  Even though the allegations were republished outside

---

[71] *Basic Capital Mgmt., Inc. v. Dow Jones & Co.*, 96 S.W.3d 475, 482 (Tex. App.—Austin 2002, no pet.). (If "[t]he taint of the alleged defamatory statement is . . . no greater in the mind of the average reader than a more exacting truthful statement would have been," it is not defamatory.)

[72] *Neely v. Wilson*, 418 S.W.3d 52, 63-64 (Tex. 2013) (citing *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (emphasis added)).

[73] *See* Exhibit 2.

[74] *Morris v. Blanchette*, 181 S.W.3d 422, 424 (Tex. App.—Waco 2005, no pet.).

[75] *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002) (applying reasonable person test in analyzing the verifiability of an allegedly defamatory statement).

[76] *Id*. at 579.

[77] *Johnson v. Phillips*, 526 S.W.3d 529, 536-38 (Tex. App.—Houston [1st Dist.] 2017, pet. filed), *reh'g overruled* (Sept. 7, 2017).

the courtroom, the court affirmed dismissal because "a defendant cannot be liable for presenting . . . an account of a trial in which communications are judicially privileged, regardless of what someone may infer from the account."[78]  The lawyer has a "right to share his perspective on the trial *and related events*," and "the First Amendment protects an author's analysis, insight, and gloss on such events, because a reasonable reader is able to make his own judgments about the evidence and would expect participants in the trial to have particular viewpoints."[79]  Because the First Amendment protects the "rhetorical hyperbole and imaginative expression that enlivens writers' prose," an author with first-hand knowledge is not required " 'to provide only dry, colorless descriptions of facts, bereft of analysis or insight' to avoid a claim of defamation."[80]

By analogy to *Johnson*, a reasonable reader of *The Blood of Patriots* would understand that Defendant Fulton had first-hand knowledge of the FBI's investigation of Plaintiff, his arrest, the evidence and arguments presented at trial , and his conviction, and Fulton was presenting his own "analysis, insight, and gloss" on those topics in the book.[81]  Complained of Statements 1, 2, 4, 5, 6, 11, 14, 15 are not defamatory because they are not objectively verifiable, or represent Defendant Fulton's "analysis, insight, and gloss" on the events described therein.[82]

### c.    Plaintiff's Claims Fail Because They are Premised on A Privileged Report of Judicial Proceedings and Matters of Public Concern

In addition to requiring dismissal if the non-moving party fails to meet his burden, the TCPA requires a court to dismiss a legal action against the moving party if the moving party "establishes by a preponderance of the evidence each essential element of a valid defense to

---

[78] *Id.* at 538 (*citing Turner*, 38 S.W.3d at 114 and *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)).

[79] *Id*. at 537 (emphasis added).

[80] *Id*. (internal citations and quotations omitted).

[81] *Id.*; *see also Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 84-86 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (newspaper's "immoderate word choice" describing an investigation into a nursing home as a potential case of "elder abuse" not sufficiently departing from the facts to be false or defamatory).

[82] *See* Exhibit 2.

the claim."  The absence of privilege is also an essential element of a defamation claim.[83]

The Complained of Statements are privileged as a reasonable and fair comment on both a judicial proceeding and matter of public concern pursuant to common law,[84] Tex. Civ. Prac. & Rem. Code §73.002, and the privileges of free speech and free press found in Article I, Section 8 of the Texas Constitution and the First and Fourteenth Amendments to the United States Constitution.[85]  Texas law protects statements that are: (1) fair, true and impartial accounts of judicial proceedings, and (2) other matters of public concern published for general information.[86]  The use of the phrase "fair, true and impartial" in §73.002 has been construed to mean "substantially true."[87]  The statutory privilege has generally been applied in Texas to many forms of print and broadcast media.[88]  The fair report privilege in §73.002 specifically applies to BenBella, as a "publisher[ ] of traditional books."[89]

As discussed, *supra*, *The Blood of Patriots* is an account of Plaintiff's arrest, trial, and conviction, which are matters of public concern.  Because the statements at issue in the *Blood*

---

[83] Tex. Civ. Prac. & Rem. Code §27.005; *Fitzmaurice v. Jones*, 417 S.W.3d 627, 632 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (dismissing a defamation claim because the statements at issue were privileged).

[84] *See Howell v. Hecht*, 821 S.W.2d 627, 632 (Tex. App.—Dallas 1991, writ denied); *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[85] *See Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 70 (Tex. App.—Waco 1990, no writ) (Where a news article is a substantially true account of court proceedings, "the First Amendment precludes attaching any liability to their publication."); *Granada Biosciences, Inc. v. Forbes, Inc.*, 49 S.W.3d 610, 619 (Tex. App.—Houston [14th Dist.] 2001) *rev'd on other grounds*, 124 S.W.3d 167 (Tex. 2003).

[86] Tex. Civ. Prac. & Rem. Code § 73.002.

[87] *Herald-Post Publishing Co., Inc. v. Hill*, 891 S.W.2d 638 (Tex. 1994).

[88] *See, e.g., Traweek v. Radio Brady, Inc.*, 441 S.W.2d 240 (Tex. App.—Austin 1969, writ ref'd n.r.e.) (applying §73.002 to radio broadcasts); *Maxwell v. Henry*, 815 F.Supp. 213 (S.D. Tex. 1993) (applying §73.002 to television broadcasts); *Crites v. Mullins*, 697 S.W.2d 715 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (applying §73.002 to news articles accessible by telephone); *Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130 (Tex. App.—Fort Worth 2009, pet. denied) (applying §73.002 to internet articles).

[89] *Main v. Royall*, 348 S.W.3d 381 (Tex. App.—Dallas 2011, no pet.) (holding interlocutory appeal process applying to claims of privilege under § 73.002 was applicable to a book publisher; *see also Liles v. Finstad*, No. 01-94-00258-CV, 1995 WL 457260 * 5-6 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (assuming without holding that § 73.002 applied to book publishers); *Harvest House Publishers v. Local Church*, 190 S.W.3d 204 (Tex. App.—Houston [1st  Dist.] 2006, pet. denied), cert. denied, 127 S.Ct. 2987 (2007) (book publisher and author were members of "print media").

*of Patriots* are protected by a qualified privilege, Plaintiff cannot defeat that privilege without proving actual malice, which he cannot do.

### d.      Plaintiff is a Public Figure and Cannot Recover for Defamation without Establishing that BenBella Acted with Actual Malice

Because BenBella's publication of *The Blood of Patriots* is protected by a qualified privilege, and because Plaintiff is a public figure, Plaintiff cannot defeat these privileges unless he can prove actual malice by BenBella, a media defendant.[90]  Furthermore, a public figure defamation plaintiff confronted with a TCPA motion is required to prove that defendants acted with actual malice under the heightened standard of clear and specific evidence.[91]  "Actual malice" means not ill will, but publication of a false statement knowing the statement was false, or with reckless disregard as to the truth of the statement.[92]  "Reckless disregard" is not sloppiness, but rather that the publisher in fact acted with awareness of the statement's probable falsity.[93]  Failure to investigate the truth or falsity of a statement before it is published is insufficient to show actual malice.[94]  Moreover, a publisher's profit motive does not support a finding of actual malice.[95]

BenBella's uncontroverted testimony establishes Defendant believed the Complained of Statements were true at the time *The Blood of Patriots* was published.[96]  No *prima facie* evidence exists which could show that BenBella reasonably should have known the statements in

---

[90] *NYT v. Sullivan*, 376 U.S. 254 (1964); *Gertz v. Welch*, 418 U.S. 323 (1974); *Curtis Publishing Company v. Butts*, 388 U.S. 130 (1967); *Casso v. Brand*, 776 S.W.2d at 551, 557 (Tex. 1989).

[91] *Avila v. Larrea*, 394 S.W.3d 646, 657 (Tex. App.—Dallas 2012, pet. denied) (noting the standard and reversing a denial of an anti-SLAPP motion); *see also Combined Law Enforcement Ass'n of Texas v. Sheffield*, 2014 WL 411672 (Tex. App.—Austin, January 31, 2014, no pet. h.) (reversing a denial of an anti-SLAPP motion and noting that Plaintiff failed to produce evidence of actual malice, one of the elements of his defamation claims).

[92] *Gertz*, 418 U.S. at 334.

[93] *Id.* at 332.

[94] *Id.*

[95]  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989).

[96] *See* Exh. 1, Declaration of Glenn Yeffeth.

The *Blood of Patriots* were false.  Plaintiff's Complaint suggests that Mr. Fulton was motivated by personal hatred of Plaintiff due to Plaintiff's rejection of Defendant Fulton's sexual overtures.[97]  However, he makes no similar allegations of defamatory motive by BenBella, and conclusory allegations are not evidence.[98]

### e.        *Plaintiff is Libel-Proof and Has Suffered No Damages*

Plaintiff cannot establish damages resulting from *The Blood of Patriots*.  Before the book was published, Plaintiff had already been tried and convicted of multiple counts of illegal possession of weapons and conspiracy to murder an Officer of the United States.[99]  Thus, it would be impossible to measure the incremental reputational harm, if any, caused by publication of the book.  Plaintiff cannot tie any damages to the book, as opposed to his own misconduct or other media reports; therefore, he cannot establish an essential element of his claim.[100]  Nor can Plaintiff bootstrap damages through his *per se* claim because he cannot demonstrate the material falsity of the Complained of Statements.[101]

Furthermore, Plaintiff's criminal record and the activities for which he was arrested, tried, and convicted, were widely known in the community before publication of *The Blood of Patriots*.[102]  As a result, Plaintiff's reputation for criminal behavior was so poor it could not have suffered damages from the publication of the book.  In applying the libel-proof plaintiff doctrine,

---

[97] *See* Complaint at § 26.

[98] *See Fawcett v. Grosu*, 498 S.W.3d 650, 663 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (reversing denial of TCPA dismissal because beyond "conclusory allegations about a failure to investigate, there is no other clear and specific *prima facie* evidence that the allegations of racism were made negligently.").

[99] *See* Doc. 10 at n. 17.

[100] *See Lipsky*, 460 S.W.3d at 593 (concluding "general averments of direct economic losses and lost profits, without more" did not satisfy minimum requirements of TCPA respecting damages element of business disparagement claim); *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *8 (Tex. App.—Austin Aug. 3, 2017, no pet.) (concluding plaintiff's affidavit testimony that defendant's accusations "have negatively impacted my ability to start my own business and earn a living" did not amount to clear and specific evidence of damages element of tortious interference with prospective business relations claim).

[101] *See generally* Exhibit 2.

[102] *See* Doc. 10 at n. 89.

"where there is no reputation it cannot be damaged and without damage to reputation there is no actionable defamation."[103]   The libel-proof plaintiff doctrine also applies when a plaintiff challenges statements that are substantially less damaging to his reputation than other unchallenged statements in the same communication.[104]   Here, Plaintiff is a convicted felon. Yet, he takes issue with being described as drinking a single beer or claiming to be innocent during his arrest.[105]   The bottom line is that Plaintiff is "libel proof as to that area of his character touched by the challenged communications"[106]—in this case, Plaintiff's criminal behavior, which is the subject matter of *The Blood of Patriots*.

### 2.   Plaintiff's Misappropriation Claim Must Be Dismissed for Failure to Submit "Clear and Specific" Evidence to Support Each Essential Element

As noted in BenBella's Rule 12(b)(6) motion, Plaintiff cannot support the elements of his misappropriation of name and likeness claim because: (1) the subject matter of *The Blood of Patriots* is Plaintiff's (partial) life story, which his not protected as his "name and likeness"; (2) the subject matter of *The Blood of Patriots* was a public concern; and (3) Plaintiff willingly put his image into the public domain prior to the publication of the book.[107]   BenBella incorporates by reference those arguments in full herein.   The same deficiencies also require dismissal under the TCPA.   Moreover, even if Plaintiff has sufficiently pled his claims, those claims must still be dismissed unless Plaintiff comes forward with "clear and specific" evidence to support each essential element of those claims. Because he cannot satisfy this burden, Plaintiff's claims must be dismissed.

---

[103] *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 517 (Tex. App.—Tyler 1987, writ dism'd w.o.j.).

[104] *Id.*

[105] *See* Complaint at ¶¶ 29, 33, 35.

[106] *Finklea*, 742 S.W.2d at 517.

[107] Doc. 10 at 23-24.

## IV.    PRAYER

For the reasons discussed above, Defendant BenBella Books respectfully requests that:

a.      the Court grant this motion and dismiss Plaintiff's claims against Defendant BenBella Books with prejudice;

b.      the Court award BenBella Books fees, costs, and expenses, along with sanctions; and

c.      the Court award and award all such other relief to which it is justly entitled.

Dated:  March 11, 2019                           Respectfully submitted,


                                                 /s/ Michael A. McCabe
                                                 Michael A. McCabe
                                                 Texas State Bar No. 24007628
                                                 mmccabe@munckwilson.com
                                                 Lauren L. Mitchell
                                                 Texas State Bar No. 24071172
                                                 lmitchell@munckwilson.com
                                                 **MUNCK WILSON MANDALA, LLP**
                                                 600 Banner Place Tower
                                                 12770 Coit Road
                                                 Dallas, Texas 75251
                                                 Telephone:  972-628-3600
                                                 Telecopier:  972-628-3616

                                                 **ATTORNEYS FOR DEFENDANT
                                                 BENBELLA BOOKS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 11th day of March, 2019, that a true and correct copy of the foregoing was served on all counsel of record via electronic mail pursuant to Fed. R. Civ. P. 5(b)(2)(e).

*/s/ Michael A. McCabe*
Michael A. McCabe

790733